**UNITED STATES of America,**

v.

**William F. KANE and Myron Freudberg, Defendants.**

United States District Court
S. D. New York.
July 9, 1965.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, for United States of America; Paul R. Grand, Asst. U. S. Atty., of counsel.

Rogge, Wright, Rogge & Wiener, New York City, for defendant William F. Kane; O. John Rogge, New York City, of counsel.

W. A. Newcomb, New York City, for defendant Myron Freudberg.

WEINFELD, District Judge.

The defendants William F. Kane and Myron Freudberg are charged in a three count indictment with two substantive violations of, and conspiracy to violate, Sections 5(a) and 24 of the Securities Act of 1933.[1] Count 1 charges that defendants conspired to violate the Act by directly and indirectly using the mails

or other interstate facilities to sell unregistered shares of American Dryer Corporation, of which Kane was then president. Count 2 charges that on or about November 10, 1959 the defendants, directly and indirectly, caused to be carried through the mails and in interstate commerce 22,000 shares of such unregistered stock for the purpose of sale and delivery after sale. Count 3 charges a similar transaction on November 23, 1959, this time involving 12,000 shares of unregistered American Dryer stock attached to a sight draft.

The defendants each move to dismiss counts 1 and 2 on the ground that prosecution is barred by the five-year statute of limitations.[2] Kane moves to dismiss the entire indictment on his claim that he obtained immunity from prosecution under Section 22 of the 1933 Act.[3] Freudberg also seeks dismissal of the entire indictment on the additional grounds of lack of venue and abuse of process amounting to a deprivation of his right to the effective assistance of counsel and his right against self-incrimination. He further seeks suppression and return of certain evidence obtained from him. The Court has separately disposed of defendants' motions for bills of particulars and for discovery and inspection of documents.

I. Statute of Limitations and Venue.

■ On the face of the indictment, returned on November 9, 1964, all twenty-two overt acts set forth in count 1, the conspiracy count, occurred within the statutory period, although most are just under the wire. Defendants, however, offer affidavits to establish that twenty-one of these acts occurred beyond the limitation period, that is, before November 9, 1959. Overt act 1, for example, alleges that on or about November 10,

1. 15 U.S.C. §§ 77e(a) and 77x.

2. The Court assumes arguendo that Fed. R.Crim.P. 12(b) (1), providing that "Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion," authorizes the present mo-

tion to dismiss part of the indictment on statute of limitation grounds. Cf. United States v. Doyle, 348 F.2d 715 (2d Cir. 1965). But see United States v. Parrino, 203 F.2d 284, 286–87 (2d Cir. 1953).

3. 15 U.S.C. § 77v(c).

1959 the defendants caused the delivery of 22,000 shares of American Dryer stock to Birnbaum & Co. But defendants contend that overt act 1 was a consummated sale, and that the sale, transfer, payment, delivery and any other incidents involving use of the mails or means of interstate commerce were completed no later than November 6, 1959. Moreover, they allege that although overt acts 2 through 21 occurred on various dates between November 10 and November 20, 1959, they relate to separate sales by Birnbaum & Co. of 21,000 of the aforementioned shares; accordingly, that such sales, having been made by Birnbaum & Co. as principal for its own account and without defendants' participation, cannot be attributed to them and relied upon to sustain the conspiracy charge.

While the Government has not answered these factual assertions, which seemingly have some documentary support, and indeed has failed to respond to the Court's request that it set out the basis for its claim (crucial also to the second count of the indictment) that matter apparently mailed in Philadelphia on November 6, 1959 was not delivered in New York until four days later,[4] the fact is that overt act 22 concerns a sight draft and 12,000 shares of stock unrelated to the earlier sale to Birnbaum & Co. and alleges a date, November 23, 1959, within the statutory period. Thus, even accepting as factually correct the defendants' position with respect to the first twenty-one overt acts, the twenty-second act alone is sufficient to uphold the conspiracy count against the contention that it is time-barred.[5]

■ Freudberg, however, argues that overt act 22 cannot save the conspiracy count because the act was not performed in this District, but in Philadelphia. Here, and the argument applies equally to his attack on the substantive counts,

he relies upon the venue provision of the Sixth Amendment and upon a novel construction of Section 5(a) (2) of the Securities Act, which reads:

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

\* \* \* \* \* \*

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

Freudberg contends this statutory language condemns two entirely distinct and separate crimes: one, "to carry," and the other, "to cause to be carried," unregistered stock through the mails or otherwise in interstate commerce, and that these are mutually exclusive crimes and so intended by Congress. According to this analysis, the crime of "carriage" is a continuing one which commences at the place of deposit and continues along the route to the mail's final destination, whereas the crime of "causation" is static, being complete at the time and place where the mailed matter is deposited. Defendant then notes that overt act 22 alleges "causation" only, that "on November 23, 1959 defendants \* \* \* caused the delivery of a sight draft to Morgan Guaranty Trust Company, New York City." Since, on his theory, overt act 22 was committed only in Philadelphia, when and where the draft was placed in the mails, he argues that nothing remains to save the conspiracy count, since under his major premise the first twenty-one counts either come within the limitation bar, or, as already noted, are Birnbaum transactions which cannot be attributed to him and his codefendant either factually or legally. Moreover, since substantive counts 2 and 3 are also couched in

---

4. Although the Government would put the burden on the defendants to show delivery in less than four days, "The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its

destination in usual time \* \* \*." Hagner v. United States, 285 U.S. 427, 430, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932).

5. Grunewald v. United States, 353 U.S. 391, 396–97, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957).

terms of "causation," acceptance of this argument would prohibit their prosecution in this District.

■■ The argument is ingenious but unpersuasive. First, to truncate overt act 22 from the other allegations in count 1 is to misread the indictment. The charge is that the November 23 mailing from Philadelphia was but a single act in the chain of events intended to further a conspiracy in which the defendants did "directly and indirectly carry *and* cause to be carried through the mails * * * [unregistered] capital stock of American Dryer for the purpose of sale and for delivery after sale." (Emphasis supplied.) Thus, even under defendant's construction of the statute, the conspiracy as alleged encompassed the crimes both of causation and of carriage. And in order to establish existence of the conspiracy, the Government is not required to prove that each of the methods to send confirmation slips to the buyer,[10] allegedly employed to effect its objectives was brought into play. Moreover, since an overt act need not itself be unlawful, there is no requirement that overt act 22 be read in terms of defendant's statutory construction. Instead, it may be construed, without reference to Section 5(a)(2), to charge that defendants on November 23, 1959 sent a letter into this District pursuant to their conspiratorial purpose. So construed, it permits prosecution of the conspiracy in this District.[6]

■ In any event, count 1 also charges that defendants conspired to "make use of * * * the mails" to sell unregistered American Dryer stock, a violation of subsection (a)(1) of Section 5. This provision says nothing about causation or carriage, but instead makes unlawful the direct or indirect *use* of the mails or other means of interstate commerce in connection with the sale of securities not registered as required. This subsection is violated when, in connection with the sale of such stock, the mails are used to transmit an offer or other sales literature,[7] to transport the securities after sale,[8] to remit the proceeds to the seller,[9] to send confirmation slips to the buyer,[10] and perhaps even when used in more tangential ways.[11] Thus, defendant's theory with respect to the construction of Section 5(a)(2) fails to deal with the issues presented by the conspiracy count, and that count must be sustained.

■ Counts 2 and 3 also survive defendant's attack, even if they are read to state violations of Section 5(a)(2) alone. In these substantive counts the defendants are charged with causing unregistered securities to be carried through the mails into this District. The deposit of mail in Philadelphia was not, as defendant contends, "the last step in the causation of the delivery of the sight draft"; rather, it was the initial step in an allegedly improper use of the mails, inseparable from the delivery of the mailed matter here in New York City. He who caused the mailing in Philadelphia likewise caused the delivery in this District. As the Supreme

---

6. See Hagner v. United States, 285 U.S. 427, 430–33, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

7. Roe v. United States, 316 F.2d 617, 620 (5th Cir. 1963); United States v. Crosby, 294 F.2d 928, 932 (2d Cir. 1961), cert. denied sub nom. Mittelman v. United States, 368 U.S. 984, 82 S.Ct. 599, 7 L. Ed.2d 523 (1962); United States v. Van Allen, 28 F.R.D. 329, 342 (S.D.N.Y. 1961).

8. United States v. Crosby, supra at 932 n. 3; United States v. Binstock, 37 F.R.D. 13, 14 (S.D.N.Y.1965); United States v.

Greenberg, 30 F.R.D. 164 (S.D.N.Y. 1962).

9. E.g., Lennerth v. Mendenhall, 234 F. Supp. 59, 63 (N.D.Ohio 1964).

10. E.g., United States v. Greenberg, 30 F. R.D. 164, 167 (S.D.N.Y.1962); United States v. Hughes, 195 F.Supp. 795, 799 (S.D.N.Y.1961).

11. See, e.g., McDaniel v. United States, 343 F.2d 785, 788 (5th Cir. 1965) (foreseeable use of mails by defendant's broker); Roe v. United States, 316 F.2d 617, 621 (5th Cir. 1963) (lulling doctrine) (dictum).

Court said in construing the mail fraud statute: [12]

"A letter may be mailed without being delivered, but if it be delivered according to the address the person who causes the mailing causes the delivery. Not only so, but the place at which he causes the delivery is the place at which it is brought about in regular course by the agency which he uses for the purpose." [13]

To adopt defendants' construction of a separate crime of "causing" would limit congressional power and would restrict venue in Securities Act cases. It would mean that one who violated the Act by depositing securities in the mail box destined for out of state delivery would by that very act restrict venue to the district of the mail box, whereas if one violated the Act by carrying the prohibited securities across state lines, he would also carry venue with him through whatever districts he passed. The contention falls of its own weight. The Court, in effect, holds that a violation of Section 5(a)(2) is an offense which continues through to the delivery of mailed matter at its intended destination.

Finally, defendant overlooks Section 20(b) of the Securities Act itself which expressly provides that criminal proceedings for violations of the Act

"may be brought either in the district wherein the transmittal of the prospectus or security complained of begins, or in the district wherein such prospectus or security is received." [14]

Nor does he take into account Section 3237 of Title 18, United States Code, which provides:

"Any offense involving the use of the mails * * * is a continuing offense and, except as otherwise expressly provided by enactment of

Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

Either statute authorizes prosecution of the offenses charged in this indictment in the Southern District of New York, into which defendants are alleged to have mailed securities not registered as required by the Securities Act.[15]

The motions to dismiss the indictment on the grounds of the statute of limitations and of lack of venue are denied without prejudice to renewal of the limitation contention at the time of trial.

## II. The Claim of Immunity.

■ Defendant Kane next moves to dismiss all of the charges against him on the ground that he gained immunity from prosecution under Section 22(c) of the 1933 Act,[16] which provides that no person subpoenaed by the Commission or an officer thereof shall be excused from testifying or producing documentary evidence on the ground it "[would] tend to incriminate him * * * ; but no individual shall be prosecuted * * * for or on account of any transaction * * * concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, documentary or otherwise * * *."

Kane, pursuant to a subpoena, appeared before an officer of the Commission on January 5, 1960. He appeared with counsel, was sworn, and after giving his name, address and occupation, refused to answer any other questions, asserting his privilege against incrimination. Admittedly, no immunity then attached, since he was not compelled to testify. His claim of immunity rests on events which allegedly occurred thereafter. Kane swears that in April of 1960, several months after he had as-

---

12. § 215 of the Criminal Code, now 18 U.S.C. § 1341.

13. Salinger v. Loisel, 265 U.S. 224, 234, 44 S.Ct. 519, 523, 68 L.Ed. 989 (1924).

14. 15 U.S.C. § 77t(b).

15. See United States v. Fabric Garment Co., 262 F.2d 631, 641–42 (2d Cir. 1958). Cf. United States v. Gross, 276 F.2d 816, 820 (2d Cir.), cert. denied, 363 U.S. 831, 80 S.Ct. 1602, 4 L.Ed.2d 1525 (1960).

16. 15 U.S.C. § 77v(c).

serted his right against self-incrimination, a Commission investigator twice called upon him in Philadelphia and questioned him about American Dryer stock transactions, the subject matter of this indictment. According to Kane, the investigator failed to inform him that his answers could be used against him in a criminal prosecution; had the investigator done so, says Kane, "it is all too humanly obvious" that he would not have answered. The investigator, on the other hand, denies interrogating Kane after his appearance before the Commission.

It is unnecessary to resolve the disputed fact issue since in any event Section 22(c) does not apply. This is not a case in which a witness has been subpoenaed, asserts his privilege against self-incrimination, and is then *compelled* to answer. The mere circumstance that, some months before, Kane had been subpoenaed and had asserted his privilege did not, in and of itself, foreclose investigators from interviewing him. No claim is made that Kane was "compelled" to give any answers or to say anything; nor is there any basis for a claim that he was overreached. The interviews, if they occurred, and accepting Kane's version of them, took place in noncoercive circumstances. Moreover, Kane in his reply affidavit acknowledges that his attorney—who also represented him before the SEC —was present during the first April interview. Upon Kane's own statement of the interviews, it is evident that he responded voluntarily and not under compulsion, real or imagined.

The motion is denied.

### III. The "Abuse of Process."

■ This is an all-inclusive motion based upon a combination of alleged governmental acts and conduct which Freudberg claims, when viewed in totality against the five-year delay in the return of the indictment, result in such unfair advantage against him as to amount to "abuse of process"; that in such circumstances this Court, in the exercise of its supervisory power over the administration of criminal justice, should quash the indictment.

■ The motion is grounded on charges (1) that his right against self-incrimination was violated when the Government acquired from him personal records in response to a subpoena duces tecum served on a corporation; (2) that he was denied the effective assistance of counsel when he was subpoenaed before the grand jury and was not permitted to have his counsel in the grand jury room, and further because he was not afforded the necessary time to prepare for the grand jury; and (3) that there was unwarranted delay in presenting the subject matter of this indictment to the grand jury.

The alleged abuse of process starts in December 1959. At that time the SEC served a subpoena duces tecum upon the Citizens & Southern Bank of Philadelphia for the production of its records relating to loans and sales of American Dryer Corporation stock. The subpoena indicated that the inquiry related to possible violations of Section 5 of the Securities Act. The bank responded on December 9 through its then president, Freudberg, who turned over to the Commission a number of cards in his own handwriting. He now claims that these records, which were copied and returned to him, were his and not the bank's; that he was not advised they might be used against him in a subsequent criminal proceeding; that in fact the conspiracy count charges as one of the means employed to achieve its purpose that he would prevent the bank from keeping records of American Dryer stock transactions and instead would himself keep "secret records" of such transactions.

■ The short answer to the defendant's contention is that the subpoena was directed to the bank and not to him; that there was no duty to warn the bank of any privilege against self-incrimination, since as a corporation it had no Fifth

Amendment right;[17] that the subpoena clearly stated the purpose of the inquiry and that ample time was afforded to the bank's officers to consult with counsel prior to responding. The fact is that the subpoena called for bank records and not Freudberg's; that in his official capacity as its president he responded to the subpoena by voluntarily delivering the cards which he now asserts were his and not the bank's. If in fact, as he now contends, the cards were his personal records, the time to have asserted that claim and his personal privilege was upon the return of the subpoena. If the defendant is impaled on the horns of a dilemma— the records are either the bank's and not privileged, or his and voluntarily produced—it is one of his own making.

Nothing has been brought forth which even remotely suggests that the bank or Freudberg was misled by the subpoena or what it called for. While the defendant alleges that the records were obtained from him by "fraud and deceit," no facts are submitted to support the charge and it is unclear upon what the charge rests.

■ Freudberg's claim that he was denied the effective assistance of counsel relates to his appearance before the grand jury. In late October 1964 he was subpoenaed to produce certain records before the grand jury. Upon his appearance on the return date, November 5, he was advised by the Assistant United States Attorney in charge of the inquiry that he was a possible defendant, and of his privilege against self-incrimination.

His request for an opportunity to consult with counsel was granted, and, at counsel's instance, Freudberg's appearance before the grand jury was adjourned until November 9. On the adjourned date his attorney insisted that Freudberg had a constitutional right to have his lawyer present in the grand jury room while he testified. When this demand was rejected the defendant went before the grand jury and read a prepared statement asserting the claimed constitutional right of counsel before the grand jury, and continued:

> "I have been told that I may not have counsel with me in the grand jury room. That being so, I must decline to answer any questions on the ground of my right to avoid possible self-incrimination under the Fifth Amendment."

He did not testify and this indictment was returned later that day.

■ The facts relied upon do not amount to a deprivation of defendant's Sixth Amendment right to the effective assistance of counsel. First, he had no right to have counsel present with him in the grand jury room. His claim to the contrary not only is without support in the cases,[18] but is in direct conflict with Rule 6(d) of the Federal Rules of Criminal Procedure,[19] and is inconsistent with the historical role of the grand jury as a secret body free of the procedural rules —even those of constitutional dimension —developed to protect defendants at trial.[20] Whatever the radiations in Esco-

17. United States v. White, 322 U.S. 694, 698–700, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); United States v. Fago, 319 F.2d 791 (2d Cir. 1963); United States v. Guterma, 272 F.2d 344 (2d Cir. 1959). Cf. United States v. Epstein, 240 F.Supp. 84, 85 & n. 2 (S.D.N.Y.1965).

18. E g., In re Groban, 352 U.S. 330, 333, 346–47, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957) (majority and dissenting opinions); Jones v. United States, 342 F.2d 863, 882 (D.C.Cir. 1964) (en banc); In re Black, 47 F.2d 542, 543 (2d Cir. 1931). See Grunewald v. United States, 353 U.S. 391, 422–23, 77 S.Ct. 963, 1 L.Ed.2d 931

(1957); United States v. Scully, 225 F.2d 113, 116 (2d Cir.), cert. denied, 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788 (1955).

19. The Rule provides that only the following persons may be present during the taking of testimony: "Attorneys for the government, the witness under examination, interpreters when needed and, for the purpose of taking the evidence, a stenographer * * *."

20. See, e.g., Levine v. United States, 362 U.S. 610, 624, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960) (dissenting opinion); Costello v. United States, 350 U.S. 359, 362–64,

bedo v. Illinois,[21] this Court finds no warrant at this time to pronounce the demise of the tradition, enforced by the Federal Rules, that grand jury testimony is taken in the absence of the witness' attorney.

Nor can the Court accept Freudberg's contention that the manner in which the case was presented to the grand jury deprived him of an opportunity to confer adequately with counsel and to bring to the attention of the prosecution or the grand jury facts tending to repel criminal charges. At his request he was granted an adjournment from November 5 to November 9, during which time he did confer with counsel familiar with the American Dryer transactions and retained additional counsel experienced in criminal matters. Given an opportunity to present his case to the grand jury, he chose instead to exercise his Fifth Amendment right. Having done so, he may not now complain of the lost opportunity to persuade the grand jury to return a No True Bill.

There remains the troubling question of the long and unexplained delay in presenting this matter to the grand jury. As early as 1960, and its civil proceeding so indicates, the SEC had a substantial basis for investigating the criminal aspects, if any, of transactions in unregistered stock of the American Dryer Corporation. For reasons not apparent the Commission did not turn the case over to the United States Attorney for prosecution until October 1964, shortly before the five-year statute of limitations would expire. Such pre-indictment delay does not, however, automatically amount to a denial of one's constitutional right to a speedy trial or, more accurately, to a denial of due process of law. There is no showing here that the delay was "purposeful or oppressive,"[22] or even that defendants have been prejudiced.[23] Indeed, it appears that the Government's case is largely documentary, that important witnesses are available, and that defendant's recollection of events has not dimmed. Absent any showing of bad faith on the part of the Government or prejudice to defendants, there is no basis for dismissal of the indictment at this time. However, this branch of the motion is denied without prejudice to renewal upon the trial where it may be determined "against the background of the trial as to whether or not in fact, by reason of inability to obtain witnesses, or for other reasons, delay has been prejudicial to the defendants in meeting the charges against them."[24]

The fact that the indictment survives the attack on this score is not to condone the delay. Indeed, the Court has taken this factor into account in granting a full and broad discovery.

76 S.Ct. 406, 100 L.Ed. 397 (1956); Blair v. United States, 250 U.S. 273, 281–83, 39 S.Ct. 468, 63 L.Ed. 979 (1919); United States v. Cleary, 265 F.2d 459, 460–61 (2d Cir.), cert. denied, 360 U.S. 936, 79 S.Ct. 1458, 3 L.Ed.2d 1548 (1959).

21. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). See United States v. Winter, 348 F.2d 204 (2d Cir. July 2, 1965); Jones v. United States, 342 F.2d 863, 870–71 (D.C.Cir. 1964); Enker & Elsen, "Counsel for the Suspect: Massiah v. United States and Escobedo v. Illinois." 49 Minn.L.Rev. 47, 73–75 (1964).

22. Pollard v. United States, 352 U.S. 354, 361, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957). See also, United States v. Torres, 343 F.2d 750, 751 (2d Cir. 1965); United States v. Simmons, 338 F.2d 804, 806 (2d Cir.

1964); United States v. Kaufman, 311 F.2d 695 (2d Cir. 1963); Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963); Douglas v. United States, 240 F.Supp. 381 (S.D.N.Y.1965); United States v. Bradford, 231 F.Supp. 187 (S.D.N.Y.1964).

23. Compare United States v. Dillon, 183 F.Supp. 541 (S.D.N.Y.1960); Petition of Provoo, 17 F.R.D. 183, 201–03 (D.Md.), aff'd sub nom. United States v. Provoo, 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955).

24. United States v. Hunter Pharmacy, Inc., 213 F.Supp. 323, 324–32 (S.D.N.Y.1963). See also, United States v. Algranati, 239 F.Supp. 116, 118 (S.D.N.Y.1965); United States v. Gilbar Pharmacy, Inc., 221 F.Supp. 160, 162 (S.D.N.Y.1963).

**IV. Motion to Suppress.**

Freudberg's motion to suppress as evidence against him the handwritten cards he produced in response to a subpoena duces tecum served on the Citizens & Southern Bank is denied for the reasons set forth in part III of this opinion.