406 F.2d 192
 UNITED STATES of America, Petitioner,
v.
Honorable John F. DOOLING, Jr., United States District Judge
for the EasternDistrict of New York, Respondent.
UNITED STATES of America,
v.
Carmine PERSICO, Salvatore Albanese, Ralph Spero, Hugh
McIntosh, Defendants.
 No. 311, Docket 33019.
 United States Court of Appeals Second Circuit.
 Argued Dec. 20, 1968.
Decided Jan. 21, 1969.
 
 Victor C. Woerheide and Robert M. Ornstein, Charles F. C. Ruff, Sp. Attys., Dept. of Justice, for petitioner.
 
 
 1
 Maurice Edelbaum, New York City, for defendant Persico.
 
 
 2
 Robert Kasanof, New York City, for defendant Albanese.
 
 
 3
 Frances T. Wolf, New York City, for defendant Spero.
 
 
 4
 Edmund A. Rosner, New York City, for defendant McIntosh.
 
 
 5
 Before LUMBARD, Chief Judge, and MOORE, Circuit Judge and RYAN, District Judge.*
 
 LUMBARD, Chief Judge:
 
 6
 The government's petition for a writ of mandamus and/or prohibition raises the novel question whether a district judge has the power to dismiss an indictment, after a jury has returned a verdict of guilty, on the ground that there has been a 'transgression of due process,' even though the trial itself was fair and the evidence supports the verdict.
 
 
 7
 We find that the district judge lacks the power to dismiss the indictment for the reasons he has given. In the exercise of our supervisory power over the administration of justice we grant the petition and direct that sentences be imposed and that judgment be entered upon the verdict of the jury.
 
 
 8
 Consideration of the government's application requires examination of Judge Dooling's intended action in the light of the lengthy history of this prosecution, including the conduct of this latest trial.
 
 
 9
 The four defendants involved in this proceeding-- Carmine Persico, Salvatore Albanese, Ralph Spero, and Hugh McIntosh-- were indicted in April 1960 for conspiracy to hijack and for hijacking a truck transporting goods in interstate commerce in violation of 18 U.S.C. 1951. To date there have been five trials based on this indictment. The first trial, in May 1961, ended in a jury disagreement. A second trial followed immediately and in June 1961 the four present defendants were convicted on both counts.[1] We reversed those convictions in July 1962 because of errors at trial. 305 F.2d 534. The third trial the following spring of 1963 was aborted by mistrial as to Persico, Albanese, and Spero, after eight days of trial, and by a second hung jury as to the other defendants. The fourth trial lasted from January to April 1964 and resulted in the conviction of all defendants. The appeal was argued in March 1965; after reviewing the record of 9,595 pages we reversed again in July 1965, 349 F.2d 6, because of errors in the trial judge's charge and remanded for a new trial.
 
 
 10
 Prior to the fifth trial the defendants moved to dismiss the indictment on the grounds that the repeated trials, and the delay in prosecution of two and one-half years following our reversal in July 1965 of the fourth trial's verdict, seriously prejudiced defendants, violated their right to a speedy trial, and constituted cruel and unusual punishment. Judge Weinstein, upon full argument by both sides, denied the motion. He pointed out that the government alone was responsible only for six months of the delay occurring after our reversal, and that at no time since this date had defendants made a definite motion for a speedy trial. See United States v. Lustman, 258 F.2d 475, 478 (2d Cir.), cert. denied 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958); United States v. Kaufman, 311 F.2d 695, 698 (2d Cir. 1963). Defendants also had made no suggestion that their trial burden had become more difficult because of the loss of any evidence or witnesses since July 1965. In the absence of a showing of prejudice because of the delay and repeated retrials Judge Weinstein Permitted the fifth trial to proceed, but granted defendants the right to renew their motion 'at the trial' if 'on the retrial of the case, it should appear that there was such prejudice. * * *'
 
 
 11
 The fifth trial commenced before Judge Dooling, in April 1968. The motions made before Judge Weinstein were renewed by defense counsel before trial commenced, at the close of the government's case, and at the close of the case before the charge to the jury. On each occasion Judge Dooling denied the motions. Transcript pp. 199, 371, 4195. Throughout this period Judge Dooling was fully informed of those respects in which defendants claimed that they had been prejudiced by the delays and repeated mistrials, and he seems to have remained consistently unimpressed by these arguments.
 
 
 12
 Verdicts of guilty were returned by the jury on May 9, 1968. On June 24, 1968, the defendants jointly moved for alternative relief: (A) to set aside the verdict and dismiss the indictment; (B) for entry of judgment of acquittal as to each and all, and (C) for an order granting a new trial. The motion papers set forth 17 reasons why relief should be granted; 13 of these referred to alleged errors regarding evidence at the trial and the conduct of the prosecutor.
 
 
 13
 Judge Dooling reserved decision on these motions, and there was no further action taken on the case until October 11, 1968. On that date the Judge distributed to all parties copies of a memorandum and order which he intended to enter dismissing the indictment. He indicated that he would not file the order, however, in order to allow government counsel an opportunity to suggest modifications in the form of the memorandum which would allow the government to appeal fram his action. The government chose to seek mandamus from this court ordering Judge Dooling to enter judgment on the verdicts and impose sentence. Judge Dooling entered no appearance in these mandamus proceedings, but the legality of his order was urged by counsel for all four defendants in briefs and oral argument.
 
 
 14
 We turn first to the propriety of Judge Dooling's proposed action.
 
 
 15
 The bulk of the memorandum before us carefully analyzes a variety of objections raised by the defense concerning the conduct of the trial. The most serious of these revolves around the appearance of the well known Mafia informer Joseph Valachi as a prosecution witness. Valachi had not testified at any of the four previous trials, and the defense was not informed of his appearance in this trial until shortly before he was called. While defense counsel objected to this element of surprise, and also to the admission of portions of Valachi's testimony, their major emphasis in the post-verdict arguments was on the prejudicial publicity which was occasioned by Valachi's appearance and which reached the jurors through the newspapers. In his opinion Judge Dooling manifests considerable concern over his own handling of this matter; in retrospect he states the view that 'the Court would have been well-advised' to begin the trial anew after the Valachi episode with a sequestered jury.
 
 
 16
 Despite his doubt, Judge Dooling concludes that the Valachi testimony 'did not destroy the fairness of the trial.' He also rejects each and every one of the defendants' other arguments centering on alleged defects in the trial. He finds that the verdicts were supported by sufficient evidence.
 
 
 17
 Despite finding no ground upon which the jury verdicts can be set aside the court then goes on to consider the motions made before Judge Weinstein relating to the possible prejudice arising from the retrials and the delay before the fifth trial. He finds that 'the specific circumstances of disadvantage which defendants advance as related to delay are not impressive.' But this observation does not, as one might expect, end the case. Judge Dooling goes on to consider the arguments concerning delay and retrial which did not turn upon a specific showing of prejudice, and which Judge Weinstein had rejected before trial without leave to renew. Reviewing the exact same facts previously passed upon by Judge Weinstein the court finds that the 'critical time lapses' occurring before the fifth trial 'were not justified and were not occasioned by acts of the defendants.' The court then states its holding:
 
 
 18
 'It is concluded that the history of the present case through the date of verdict in the fifth trial, including the merely marginal fairness of the fifth trial, reflects transgression of the due process limitations upon the government rights of retrial and orderly deliberations in seeking retrial. * * * (cases cited) It is not suggested that the subtraction of a single element of the whole history through the time of the rendition of the verdict would not require, or at least justify, a different result. It is held that the aggregate here has reached the point at which to enter judgments of conviction against the defendants would be to deny them due process.'
 
 
 19
 It is apparent from the court's memorandum that the proposed dismissal of the indictment is not based on the powers conferred on the district courts by the Federal Rules of Criminal Procedure. The court relies on none of the Rules in its memorandum, and its findings of fact and law, the correctness of which is not now before us, indicate its belief that the Rules do not sanction its proposed action.
 
 
 20
 The only Rule which conceivably could be read as authorizing the dismissal of an indictment under the present circumstances is Rule 48(b):
 
 
 21
 'If * * * there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, information, or complaint.'
 
 
 22
 The Rule implements the right to a speedy trial guaranteed by the Sixth Amendment. Pollard v. United States, 352 U.S. 354, 361 n. 7, 77 S.Ct. 481, 1 L.Ed.2d 393 (1957); Fleming v. United States, 378 F.2d 502, 503 n. 3 (1st Cir. 1967). It seems doubtful that this Rule contemplates the dismissal of an indictment after the conclusion of a trial and the return of verdicts of guilty, but there is no need to resolve this question for present purposes. There is no doubt that before Rule 48(b) can be invoked there must be a showing that the delay prejudiced the defendant's ability to rebut the government's case, or that the delay was caused by oppressive governmental action. See, e.g., Fleming v. United States, 378 F.2d 502, 504 (1st Cir. 1967); United States v. Bennett, 364 F.2d 499, 500 (2d Cir.), cert. denied 386 U.S. 917, 87 S.Ct. 876, 17 L.Ed.2d 789 (1966); United States v. Sanchez, 361 F.2d 824, 825 (2d Cir. 1966); United States ex rel. Von Cseh v. Fay, 313 F.2d 620, 624 (2d Cir. 1963). In his memorandum Judge Dooling specifically finds that the claims of prejudice by the defendants are 'unimpressive,' and impliedly holds that the delay was not 'purposeful or oppressive.' These facts, together with his affirmative statement that his action is taken on 'due process' grounds, demonstrates that Judge Dooling does not regard Rule 48(b) as authorizing the dismissal of this indictment.
 
 
 23
 It is equally clear that Judge Dooling does not propose to act under Rule 29 or Rule 33, both of which allow a trial judge to set aside a verdict of guilty. Rule 29 authorizes this action, together with the entry of a judgment of acquittal or the ordering of a new trial, only when the evidence is insufficient to support the verdict, a finding which Judge Dooling rejects in his opinion. Rule 33 empowers the court to order a new trial 'if required in the interest of justice.' Judge Dooling found that the trial of the defendants was fair, although from his opinion it is evident that he has entertained some doubts on this score. We must read his proposed memorandum and order, which would dismiss the indictment rather than order a new trial as allowed by Rule 33, as a denial of the defendants' motion for a new trial.
 
 
 24
 Since the Federal Rules provide no basis for the court's proposed action it must find its justification, if any, in the inherent power of a district court 'to do justice.' United States v. Apex Distributing Co., 270 F.2d 747, 756 (9th Cir. 1959); O'Neal v. United States, 272 F.2d 412, 413-414 (5th Cir. 1959); see United States v. Heath, 260 F.2d 623, 632 (9th Cir. 1958); United States v. Kane, 243 F.Supp. 746, 752 (S.D.N.Y. 1965). But whatever may be the scope of this power, in our view the proposed action of the court is not supported by any findings made in its memorandum, but rather only by conclusions stated in general terms.
 
 
 25
 In final analysis his conclusion is not based on any ruling regarding the matters left open by Judge Weinstein, but rather, it would seem, upon the court's own sense of uneasiness because of doubt that the trial has been fair. In such event the proper course for the trial judge would have been to confess his own errors and grant a new trial: it does not lie in his power to put an end to the case by dismissal because of vague and unsubstantiated doubts. The proposed action is without precedent, and we believe it would seriously disrupt the prompt and efficient administration of criminal justice.
 
 
 26
 The court cites four cases as analogous support for its proposed order dismissing the indictment, but they have little relevance. In United States v. Parrott, 248 F.Supp. 196 (D.D.C.1965), and Petition of Provoo, 17 F.R.D. 183, 184 (D.Md.1954), aff'd 350 U.S. 857, 76 S.Ct. 101, 100 L.Ed. 761 (1955), the district courts dismissed indictments before trial had begun, and upon showings that the defendants had been prejudiced by the delays in prosecution. The holding of the Court of Appeals in Ross v. United States, 121 U.S.App.D.C. 233, 349 F.2d 210, 215 (1965), reversing a conviction in the exercise of its supervisory power over the district courts, also was based on a finding of prejudice. See Hardy v. United States, 127 U.S.App.D.C. 162, 381 F.2d 941, 943 (1967).
 
 
 27
 Rule 12(b)(2) of the Federal Rules provides:
 
 
 28
 'Defenses and objections based on defects in the institution of the prosecution or in the indictment or information * * * may be raised only by motion before trial. * * *'
 
 
 29
 The defendants did make their motions in a timely manner before Judge Weinstein. Rule 12(b)(4) governed the disposition of the motions by Judge Weinstein:
 
 
 30
 'A motion before trial raising defenses or objections shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue.'
 
 
 31
 The evident purpose of these two provisions of Rule 12(b) is to encourage the disposition before trial of as many motions as possible which challenge the right of the government to continue a prosecution. Obviously this practice is greatly preferable to considering such a motion only after the completion of a lengthy trial. But Rule 12(b)(4) recognizes that occasionally a decision must be postponed until trial, since the merits of the motion may depend on facts which will not be developed until witnesses are called and evidence is introduced. Thus Judge Weinstein, while denying the motions for dismissal before trial, acknowledged the possibility that events at trial might reveal that the delay in prosecution had indeed prejudiced the defense, even though no prejudice was apparent on the record before him. He therefore granted defendants leave to renew their motions at the trial if, and only if, 'on the retrial of the case, it should appear that there was such prejudice.' Except as revived by such a showing of prejudice the defendants' motions to dismiss the indictments were 'determined before trial,' and could not thereafter be entertained by a district judge without doing violence to the interests of judicial economy furthered by Rule 12(b)(2) and (4).
 
 
 32
 Yet this is just the action threatened by the memorandum and order before us. The claims of prejudice through delay are still found to be 'unimpressive,' yet the motions to dismiss the indictment are about to be granted on the grounds rejected, without leave to renew, by Judge Weinstein before trial. This dismissal, after a five week trial during which no right of the defendants is found to have been violated, would result in a shocking waste of jury and court effort. Judge Dooling had ample discretion to take appropriate action during the trial to protect the rights of the defendants, including their right not to suffer serious prejudice because of the delays and the number of retrials which have occurred over the course of this prosecution. And, of course, upon appeals from convictions this court will review the propriety of Judge Weinstein's original ruling, Judge Dooling's ruling that events at the trial did not demonstrate that defendants had been seriously prejudiced by the delays before trial, and any other rulings which denied properly preserved objections to the conduct of the trial itself. The existence of these avenues of redress for the defendants eliminates any need for the existence of a power in the trial court to dismiss an indictment, after the return of guilty verdicts, on grounds rejected before trial. The exercise of such a power by a district judge would interfere seriously with the proper prosecution of criminal cases in the federal courts.
 
 
 33
 We think the remedy for the proposed dismissal of the indictment by the district judge which we have found to be beyond his power is to issue the writ of mandamus prayed for by the government and direct the district judge to proceed to sentence the defendants and enter judgment on the verdict of the jury.
 
 
 34
 Mandamus is an extraordinary remedy, and is appropriate only where there are 'exceptional circumstances amounting to a judicial 'usurpation of power." Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967). Its use in aid of the lawful rights of the government in the prosecution of criminal cases is well established. See United States v. Smith, 331 U.S. 469, 67 S.Ct. 1330, 91 L.Ed. 1610 (1947); Ex Parte United States, 287 U.S. 241, 53 S.Ct. 129, 77 L.Ed. 283 (1932); Ex Parte United States, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916); United States v. Mayer, 235 U.S. 55, 35 S.Ct. 16, 59 L.Ed. 129 (1914). The fact that Judge Dooling has not formally filed his memorandum and order does not render the government's application for mandamus premature. See United States v. Mayer, 235 U.S. 55, 57, 35 S.Ct. 16, 59 L.Ed. 129 (1914); cf. Will v. United States, 389 U.S. 90, 93, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967).
 
 
 35
 We will not pause to determine whether, if Judge Dooling entered his proposed order, the government would be able to appeal his determination under 18 U.S.C. 3731 (1964). Even if it were clear that the government could not appeal the government's argument for mandamus would not be made more compelling, for mandamus may not do service for an appeal which has been barred by the Congress. Will v. United States, 389 U.S. 90, 97, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). We think it equally true that the fact that the government may have no right of appeal does not act as a conclusive bar to the issuance of mandamus in its favor. Certainly the restrictions placed upon the government's right to appeal do reflect important policy judgments by Congress, at their core protecting the right against double jeopardy, which must not be undermined by casual resort to mandamus. But circumstances can arise which present a compelling need for the issuance of mandamus in order to further important countervailing interests. Here we find this need in our responsibility for preventing gross disruption in the administration of criminal justice, and we act pursuant to our supervisory power over the district courts. Cf. United States v. Bryan, 393 F.2d 90 (2d Cir. 1968). The Supreme Court, in affirming the issuance of a writ of mandamus by the Court of Appeals for the Seventh Circuit, expressed in the clearest terms its support for the power we now exercise:
 
 
 36
 'We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system.' La Buy v. Howes Leather Co., 352 U.S. 249, 259-260, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957).
 
 
 37
 Accordingly, we hold that in the circumstances of this case the fact that the government might not have been able to appeal from Judge Dooling's order does not render mandamus inappropriate. See United States v. Igoe, 331 F.2d 766, 769 (7th Cir. 1964). To the extent that the dictum in United States v. Bondy, 171 F.2d 642, 643-644 (2d Cir. 1948), suggests a different result we do not adopt it.
 
 
 38
 We are convinced that it is so highly improper and undersirable for a district judge to take the action which is here proposed by Judge Dooling that we find present the 'extraordinary circumstances' which require are justify the exercise of our power to issue the writ of mandamus. For us to acquiesce in this unprecedented action would be to encourage the use of similar procedures by the district courts in the future. Since we believe that the dismissal of an indictment after a verdict of guilty, upon grounds examined and found deficient before trial, is highly deleterious to the sound administration of criminal justice, it is important that we make a clear and unequivocal response to the first example of such a dismissal to come before us. Cf. Schlagenhauf v. Holder, 379 U.S. 104, 110, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).
 
 
 39
 We are also of the view that the exercise of our mandamus power is especially appropriate in a case which has already taken a grossly disproportionate amount of trial time in the United States judicial district where the delay in reaching criminal cases for trial is the greatest of any district in the country.[2] See Administrative Office of the United States Courts, Annual Report of the Director-- 1968, Table D 3b.
 
 
 40
 We issue the writ of mandamus, and direct the district judge to sentence the defendants and enter judgment on the verdicts of the jury. Judge Dooling remains free to make such further findings as might aid this court in its eventual review of the convictions of these defendants.
 
 
 41
 Nothing we have said is to be construed as expressing an opinion on the merits of any of the contentions made by a party which may be relevant upon appeals from the convictions.
 
 
 
 *
 Sitting by designation
 
 
 [1]
 One Magnasco was convicted on both counts, but was shot and killed prior to sentence. A co-defendant LaFante was convicted on the conspiracy count only. At the conclusion of the government's case in April-May 1968 trial Judge Dooling directed LaFante's acquittal for lack of sufficient evidence
 
 
 [2]
 In fairness to the district judges it should be pointed out that two unfilled vacancies in the court for a period of two years prior to the summer of 1968 are the principal reason for the delays in criminal trials. Recent efforts of the judges, under Chief Judge Zavatt, including summer sittings by the active and senior judges, and by visiting judges, have greatly reduced the number of pending indictments and the time intervals before trial