UNITED STATES of America,
Appellant,

v.

Richard D. WHITTED, Jr., Appellee.

No. 71–1200.

United States Court of Appeals,
Eighth Circuit.

Jan. 24, 1972.

William K. Schaphorst, Asst. U. S. Atty., Richard A. Dier, U. S. Atty., for appellant.

Richard J. Bruckner, Schrempp & Bruckner, Omaha, Neb., for appellee.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

This case raises the question of a District Court's power to dismiss an indictment following a jury's return of guilty verdicts on all counts of the indictment, and the further question of the appropriate action to be taken by the District Court upon our determination that his dismissal of the indictment was improper.

The defendant is the Sheriff of Sarpy County, Nebraska. In March of 1970, Whitted appeared before a federal grand jury investigating possible violations of federal laws governing interstate gambling activities. Among other things, Whitted was questioned with regard to trips he had taken to Las Vegas, Nevada, who had financed one of those trips, and whether or not he had ever received gifts or gratuities from bookies in Sarpy County. Whitted answered all of the questions put to him.

On April 15, 1970, a United States Commissioner's complaint for perjury was issued against Whitted charging that he lied with respect to the number of trips he had taken to Las Vegas and with respect to the financing of one trip. This complaint was subsequently dismissed. On June 9, 1970, the grand jury before which Whitted had testified returned a perjury indictment in three counts, setting forth the two counts which had been in the Commissioner's complaint and adding a third count to

cover his testimony respecting gifts and gratuities from bookies.

The defendant made various pretrial motions. Among them was a motion to dismiss the indictment on the grounds that it had been returned by a grand jury which had been biased and prejudiced against Whitted by the testimony presented before it and by the conduct of the United States Attorney. The District Court overruled this motion on September 18, 1970, after hearing argument.[1]

On September 23, 1970, the case proceeded to trial. The jury found Whitted guilty of perjury on all three counts. He made timely motions for arrest of judgment, for judgment of acquittal, and for a new trial. He also renewed his motion for dismissal of the indictment.

The trial court, 325 F.Supp. 520, dismissed the indictment on March 23, 1971, stating:

"During the course of the jury trial defendant's entire testimony before the Grand Jury was read to the trial jury. I have carefully studied this testimony, that of other witnesses who testified before the Grand Jury, and the entire proceedings which led up to the returning by that tribunal of the indictment against the defendant, and have concluded that it is impossible to determine whether the indictment against the defendant was returned on the basis of evidence or by the possible prejudice and bias of jurors or both, and accordingly must therefore dismiss the indictment."

The government has brought this appeal to challenge the District Court's power to dismiss the indictment following the return of the verdict. We agree with the government that the District

1. On July 1, 1970, some ten weeks before he overruled Whitted's motion to dismiss the indictment, the trial court had ordered the production, for *in camera* inspection, of the testimony of all witnesses before the grand jury whose testimony was relevant to the subject matter of the jury's investigation. We can only presume, therefore, that the trial court had studied this testimony at the time he made his September 18 ruling on the motion to dismiss the indictment. Furthermore, we find no indication that the trial court reserved ruling on the motion to dismiss in any manner.

Court has no such power and we accordingly reverse.

■ The Federal Rules of Criminal Procedure set forth the procedures to be followed by the District Court in conducting criminal trials. They have the force and effect of law and are binding upon the lower federal courts. United States v. Igoe, 331 F.2d 766 (7th Cir. 1964), cert. denied, 380 U.S. 942, 85 S. Ct. 1020, 13 L.Ed.2d 961 (1965).

Rule 12(b) alone purports to govern the procedure to be followed on a motion to dismiss the indictment for defects in the indictment. It states:

"(b) The Motion Raising Defenses and Objections.

"(1) Defenses and Objections Which May Be Raised. Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.

"(2) Defenses and Objections Which Must Be Raised. Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense *may be raised only by motion before trial.* The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

"(3) Time of Making Motion. The motion shall be made before the plea is entered, but the court may permit it to be made within a reasonable time thereafter.

"(4) Hearing on Motion. *A motion before trial raising defenses or objections shall be determined before trial unless the court orders that it be de-ferred for determination at the trial of the general issue.* An issue of fact shall be tried by a jury if a jury trial is required under the Constitution or an act of Congress. All other issues of fact shall be determined by the court with or without a jury or on affidavits or in such other manner as the court may direct." (Emphasis added.)

Fed.R.Crim.P. 12(b).

■ While the rule does not specifically answer the question of whether or not the trial court has power to reverse its prior ruling on a motion to dismiss, after a guilty verdict has been returned, we believe it does express a strong policy against such post-verdict reversals. The rule requires the District Court to determine the motion before trial unless special circumstances exist. Such special circumstances were not present here.

The parties have not cited to us, nor have we discovered, any cases precisely on point. But the Second Circuit has considered a similar case, United States v. Dooling, 406 F.2d 192 (2nd Cir.), cert. denied sub nom, Persico v. United States, 395 U.S. 911, 89 S.Ct. 1744, 23 L.Ed.2d 224 (1969), and we find that Court's reasoning persuasive here.

In *Dooling,* the defendants had been indicted in 1960. For reasons not germane to this case, there had been four previous trials. Before the fifth trial, the defendants made a motion to dismiss the indictment. The motion was denied by Judge Weinstein and the case was set for trial before Judge Dooling. The defendants again made motions to dismiss before Judge Dooling prior to trial, at the close of the government's case, and at the conclusion of the trial. Judge Dooling was apprised throughout of all respects in which the defendants claimed to have been prejudiced. Nevertheless, he denied the motion to dismiss the indictment on all three occasions. The case was submitted to the jury and guilty verdicts were rendered. The defendants moved for dismissal of the in-

dictment, for judgment of acquittal, and for new trial. Judge Dooling submitted a proposed memorandum and order dismissing the indictment.

In his memorandum, Judge Dooling considered trial errors alleged by the defendants, but concluded that the trial had been fair and that none of the errors, if there were any, justified a retrial. He then went on, however, to consider the arguments which Judge Weinstein had rejected prior to trial without leave to renew. On the exact same facts considered by Judge Weinstein and known to himself on the three prior occasions when he refused to dismiss the indictment, Judge Dooling concluded that entry of judgments of conviction would deny the defendants due process. Judge Dooling stated his intention to dismiss the indictment.

Judge Dooling supplied copies of this proposed memorandum to the parties to permit them to suggest modifications. Instead, the government sought a writ of mandamus from the Court of Appeals for the Second Circuit ordering Judge Dooling to enter judgments of conviction against the defendants.

The Second Circuit held that Judge Dooling lacked power to dismiss the indictment. It reasoned that the only basis for his proposed action was the District Court's inherent power to do justice. The Circuit Court, noting that Judge Dooling's action was not supported by any findings, but was rather based upon his sense of uneasiness about the fairness of the trial, said:

"* * * [I]t does not lie in [Judge Dooling's] power to put an end to the case by dismissal because of vague and unsubstantiated doubts. The proposed action is without precedent, and we believe it would seriously disrupt the prompt and efficient administration of criminal justice."

406 F.2d at 197.

"* * * And, of course, upon appeals from convictions this court will review the propriety of Judge Weinstein's original ruling, Judge Dooling's ruling that events at the trial did not demonstrate that defendants had been seriously prejudiced by the delays before trial, and any other rulings which denied properly preserved objections to the conduct of the trial itself. The existence of these avenues of redress for the defendants eliminates any need for the existence of a power in the trial court to dismiss an indictment, after the return of guilty verdicts, on grounds rejected before trial. The exercise of such a power by a district judge would interfere seriously with the proper prosecution of criminal cases in the federal courts.

\* \* \* \* \* \*

"* * * Since we believe that the dismissal of an indictment after a verdict of guilty, upon grounds examined and found deficient before trial, is highly deleterious to the sound administration of criminal justice, it is important that we make a clear and unequivocal response to the first example of such a dismissal to come before us. * * *"

406 F.2d at 198, 199.

See also, United States v. Weinstein, 452 F.2d 704 (2nd Cir., 1971).

We believe that the considerations involved in *Dooling* apply to the facts of this case. Here, the trial judge was aware, at the time he originally overruled the motion to dismiss on September 18, of all of the facts and circumstances which the defendant relied upon to establish grand jury bias. The court rejected Whitted's contentions at that point. We have reviewed the trial testimony and do not find any facts concerning grand jury bias which were elicited at trial, but had been unknown to the trial judge at the time he overruled the motion to dismiss on September 18.

█ The court attempted to sustain its dismissal on the basis that "* * * it is impossible to determine whether the indictment against the defendant was returned on the basis of evidence or by the possible prejudice and bias of the jurors or both. * * *". But as the

Second Circuit has said, "* * * It does not lie in [the District Court's] power to put an end to the case by dismissal because of vague and unsubstantiated doubts. * * *". We do not believe that the trial court's attempted justification for dismissing this indictment amounts to anything more than "vague and unsubstantiated doubts."

The decision of the District Court must, therefore, be reversed.

■ There remains the additional question of what steps the District Court should take on remand. The government argues that the court must enter a judgment of conviction. It relies upon *Dooling* for the proposition that the court's dismissal of the indictment amounted to a rejection of the outstanding motions for judgment of acquittal, for arrest of judgment, and for new trial.

■ We do not believe *Dooling* can properly be read to require this result. The Court there stated:

"* * * We must read [Judge Dooling's] proposed memorandum and order, which would dismiss the indictment rather than order a new trial * * *, as a denial of the defendant's motion for a new trial."

406 F.2d at 196.

We interpret this statement to mean, simply, that Judge Dooling, in his memorandum, had considered the errors raised by the motion for new trial and had concluded that the trial was fair. The situation here is quite the contrary. The trial judge did not consider the errors which allegedly occurred at trial; rather, he specifically avoided ruling on any trial errors. We cannot, therefore, in any manner read his memorandum as disposing of the outstanding motions. The government has cited no authority other than *Dooling* for the proposition

that a favorable ruling on one motion necessarily amounts to a denial of other outstanding motions. Under the circumstances of this case, we think it is clear that the trial court did not intend any such result.

Our reversal of the trial court's decision to dismiss the indictment leaves that court free to act upon the outstanding motions. United States v. Weinstein, *supra*. Practically speaking, however, we believe that the only alternative open to the District Court on remand is to order a new trial.

■ A judgment of acquittal would be appropriate only if the evidence at trial had been insufficient to sustain Whitted's conviction. Fed.R.Crim.P. 29. Our review of the record convinces us that the evidence, if believed, was sufficient to sustain the conviction. See, United States of America v. Mechanic (United States of America v. Kogan), 454 F.2d 849 (8th Cir. 1971); United States of America v. White, 451 F.2d 351 (8th Cir. 1971); United States v. May, 419 F.2d 553 (8th Cir. 1969).

■ Nor do we believe that the trial court could justifiably grant the motion in arrest of judgment. Such a motion must be based upon failure of the indictment to charge an offense or upon a finding that the court was without jurisdiction of the offense. Fed.R.Crim.P. 34. Neither of those circumstances is present here.

■ On the other hand, we believe that the proper course for the trial judge to follow is to grant a new trial. All of Whitted's ground jury testimony was read to the petit jury at the outset of the trial under the mistaken view that it was the trial jury's function to determine if the allegedly perjurious testimony was material to the grand jury's inquiry.[2] The District Court, in dis-

---

2. The defendant challenged this view. By the end of the trial, the court had concluded that the materiality of the testimony was a question of law to be determined by the court. The government now

also acquiesces in that view. United States v. Edwards, 443 F.2d 1286 (8th Cir. 1971); Dolan v. United States, 218 F.2d 454 (8th Cir. 1955).

missing the indictment, expressed concern that all of Whitted's grand jury testimony had been admitted. We think that the trial court's concern was properly placed. Much of Whitted's testimony tended to show that he may have committed acts of misconduct or associated with unsavory characters, but it had nothing to do with proving perjury [3] and was, therefore inadmissible. United States v. Crawford, 438 F.2d 441 (8th Cir. 1971).

The judgment of the District Court is reversed and the case is remanded for further proceedings consistent with this opinion.

3. We believe that the following testimony was clearly prejudicial and was not relevant to proving perjury:

(1) testimony tending to show that Whitted hired Robert Daniels as a deputy, knowing that Daniels had convictions for various crimes and, additionally, kept company with known bookies and gamblers (pp. 14–17 of transcript of Whitted's grand jury testimony);

(2) testimony that the mother-in-law of one of Whitted's deputies owned property on which a bookmaking operation was carried on (pp. 28–30 of transcript);

(3) questions attempting to show that Daniels was a pimp (p. 30 of transcript);

(4) questions which insinuated that Whitted had knowledge of Daniel's blackmailing activities arising from the fact that Daniels had hidden in a woman's bedroom with a camera while she was present there with another man (pp. 32–33 of transcript);

(5) questions tending to show that Daniels was a narcotics pusher and Whitted knew it (p. 35 of transcript).

Our mentioning these items specifically does not necessarily mean that we view the remainder of Whitted's testimony as material to proving perjury.