AFTER REMANDMENT
Appellant was convicted for unlawfully possessing narcotic drugs. He was sentenced to eight years imprisonment in the penitentiary. He was represented by retained counsel and at arraignment pleaded not guilty. After sentence was imposed he gave notice of appeal and trial counsel represented him on appeal.
On January 24, 1978, this court affirmed the conviction,Goodman v. State, Ala.Cr.App., 356 So.2d 691, and on March 31, 1978, the Supreme Court denied certiorari, Ala., 356 So.2d 698.
On September 25, 1978, Goodman filed a petition for writ of error coram nobis alleging that he was denied effective assistance of counsel because of the failure to call to the witness stand two persons he had subpoenaed for trial who allegedly would testify that petitioner did not know the drugs were in the automobile he was driving when arrested. The petition was denied without a hearing and this court remanded for an evidentiary hearing on all the issues raised in the petition. Such a hearing was held and a supplemental transcript was filed in this court.
At the evidentiary hearing the attorney who represented Goodman on this trial in chief was called as a witness for the State. This attorney had considerable experience in the trial of criminal cases both as a prosecutor for six years and as defense counsel for more than seventeen years. He testified that Goodman had a prior felony conviction and that when he was arrested narcotics were found in the car he was driving. Also when the officers searched his person they found a piece of glass in his pocket that very closely matched some vials of drugs that had been taken in the drug store robbery. The attorney stated Goodman had told a detective that he knew a robbery was going to be perpetrated and he was outside in the car during the actual robbery. In the light of these facts the attorney told Goodman he thought it best for him not to testify in the case and Goodman accepted his advice. Actually Goodman made the decision himself not to take the stand in his own behalf.
This attorney further testified that he interviewed the two witnesses subpoenaed for the trial and they told conflicting stories about the drugs found in Goodman's car. Both had been convicted for robbing this identical drug store while Goodman remained in the car. The two men had escaped from the penitentiary. The attorney thought these two witnesses would hurt more than they would help the case and Goodman agreed with this decision.
The testimony of Goodman's brother was to the effect that he and another man robbed the drug store and the other man put the narcotics in Goodman's car without his knowledge. He stated his brother was drunk at the time and did not know about the robbery. He admitted that he entered the drug store with a shotgun and robbed the man on duty of Class A drugs. He further admitted that Goodman knew they had a quantity of drugs that were taken in the robbery. He stated the other man, Raymond Lowe, put some of the narcotics in the car that Goodman was driving the night of the robbery and at the time he was arrested.
Goodman's wife testified that she was present at her husband's trial and to the best of her recollection her husband wanted his brother and Raymond Lowe to testify.
Mr. Goodman testified in his behalf and admitted that he saw his brother and Lowe come from the drug store carrying boxes and a shotgun but he did not know they had robbed the drug store. However, he admitted that he told the polygraph examiner that the drugs found in his car came from the robbery. He was asked to explain what he was doing with the piece of glass found in his pocket at the time he was arrested and stated that he was sitting on the couch talking with his brother when he noticed a baby on the floor who was gagging, that he picked up the baby, ran his finger down the *Page 864 
baby's throat, got the piece of glass and put it in his pocket. He further admitted that he "shot up" some Demerol that night after the robbery while at the Cole house where the drugs from the robbery were carried and they had big party.
The attorney who helped the chief attorney try the original case testified that, when the State rested, the defendant, his wife, and both attorneys had a conference, and it was mutually decided that Mr. Goodman would not testify and that his brother would not be called as a witness either. This decision was based on the prior felony convictions of both Mr. Goodman and his brother.
At the conclusion of this hearing the trial court again denied the petition. We are in full accord with the decision of the trial court and affirm the case.
The office of the writ of error coram nobis, under Alabama law, is to bring to the attention of the court for correction of an error of fact, one not appearing on the face of the record, unknown to the court or party affected, and which, if known in time, would have prevented the judgment challenged and served as a motion for a new trial on the ground of newly discovered evidence. The writ is not intended to relieve a party of his own negligence and cannot serve as a substitute for an appeal, nor enable a defendant to question the merits of the case for which he stands convicted. Tillis v. State, Ala.Cr.App., 349 So.2d 95; Groce v. State, 48 Ala. App. 709,267 So.2d 499; Smith v. Hixon, 149 F. Supp. 283, D.C.; Smith v.State, 245 Ala. 161, 16 So.2d 315.
In MacKenna v. Ellis, 280 F.2d 592, 5th Cir., the court held:
 "We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. We consider undivided loyalty . . . to client as essential to due process."
The evidence in this case clearly shows that counsel for the accused used good judgment in not calling convicted felons as witnesses. Tactical considerations often become paramount in the trial of a case. To successfully show ineffective representation by counsel appellant must show that the conduct of the attorney reduced the trial to a farce, sham, or mockery of justice. Even though it can be shown that trial counsel has made a mistake unfavorable to his client, that alone is not sufficient to demonstrate inadequate representation. Matters of trial strategy should be left to the judgment of trial counsel in absence of a clear showing of inadequate representation.Tillis v. State, 292 Ala. 521, 296 So.2d 892; Robinson v.State, Ala.Cr.App., 361 So.2d 1172; Trammell v. State, 276 Ala. 689, 166 So.2d 417. Ala.Dig.Crim. Law, 641.13 (1).
There is nothing in the record before us which even slightly indicates that the findings of the trial court are not correct. The judgment of the trial court is, in all things, affirmed.
AFFIRMED.
All the Judges concur.