407 So.2d 874 (1981)
Ex parte: Charles M. NICE.
(Re: Ex parte: State of Alabama ex rel. Charles A. Graddick, Attorney General for the State of Alabama.)
(In re: STATE of Alabama v. Harold PUGH.)
Ex parte: Harold PUGH.
(Re: Ex parte: State of Alabama ex rel. Charles A. Graddick, Attorney General for the State of Alabama.)
(In re: STATE of Alabama v. Harold PUGH.)
80-186, 80-187.
Supreme Court of Alabama.
July 17, 1981.
*875 David Cromwell Johnson and Ronda H. Lacey, Birmingham, for petitioner.
Charles A Graddick, Atty. Gen., Douglas A. Valeska, Deputy Dist. Atty., Birmingham, for the State.

ON REHEARING
MADDOX, Justice.
The application for rehearing by the State of Alabama is granted; the original opinions in these cases are withdrawn and the following opinion is substituted therefor:
Harold Pugh was found guilty of robbery by a jury in Jefferson County and was duly sentenced by the trial judge. Pugh timely filed a motion for a new trial, and the trial judge granted his motion.
The transcript of the proceedings held before the trial judge on Pugh's motion for a new trial contains the following statement by the trial judge of his reasons for granting Pugh's motion for a new trial:
It was based largely on the fact that the Court's strong feelings that the testimony which convicted this defendant, largely the testimony of Ben Fowkes (sic), was *876 dubious in my mind; it was not of sufficient weight, and especially the fact that he did not name the individual that night that he was robbed, that he could still talk. Had he mentioned him that night, it might have been an entirely different thing; but, there was some two weeks later before he actually gave the fellow's full name.
And that is the real basis. And I just have strong doubts about that case.
* * * * * *
... I feel it is the Court's responsibility, when it feels that an injustice has probably been done, as may have been done here, that it is the Court's responsibility to set aside a verdict. And this is probably the first time I have ever done it, but I felt so strongly about this case, and considered it for weeks and weeks before this hearing. And I felt that for the ends of justice [to] be met, that a new trial should be given.
The State filed a petition for mandamus in the Court of Criminal Appeals, and asked that court to reverse the judgment of the trial court which granted Pugh's motion for a new trial. The Court of Criminal Appeals, with all judges concurring, issued a peremptory writ of mandamus to the trial judge, who, in response to the mandate from the Court of Criminal Appeals, rescinded and held for naught his order granting Pugh's motion for a new trial.
Pugh timely filed a petition for certiorari in this Court, and on February 3, 1981, this Court granted his petition and entered the following order:
PER CURIAM.
Writ Granted. In the interest of expediting a decision in this cause, the provisions of Rule 39(h) and (i), are hereby suspended under the provisions of Rule 2(b), and the cause is ordered submitted when the Court of Criminal Appeals forwards to this Court the record, one copy of the briefs, and appendices, if any, in this cause. No further briefs will be required, nor will oral argument be permitted.
WRIT GRANTED.
All the Justices concur.
On February 18, 1981, this Court reversed and remanded the cause and issued the following opinion:
PER CURIAM.
Upon consideration of the Petition, brief of petitioner, and the State's brief in opposition thereto, the judgment of the Court of Criminal Appeals granting the State of Alabama's petition for mandamus is reversed and this cause is remanded for an order consistent herewith. Mandamus will not lie to compel the trial court's exercise of discretion in a particular manner, nor to review the lower court's proceedings for error, nor as a substitute for appeal. State v. Cannon, 369 So.2d 32 (Ala.1978).
REVERSED AND REMANDED.
All the Justices concur.
The State petitioned for rehearing and has urged that our original decision was incorrect.
The State's petition for mandamus in the Court of Criminal Appeals presented the novel question whether a circuit judge has the power to order a new trial, after a jury has returned a verdict of guilty, on the ground "that the testimony which convicted this defendant, largely the testimony of Ben Fowkes (sic), was dubious in my mind...."
After a more thorough examination of the facts[1] on rehearing, we conclude that the judgment of the Court of Criminal Appeals is due to be affirmed, for the following reasons:
(1) The Court of Criminal Appeals has authority to issue such remedial and original writs as are necessary to give it a general superintendence and control of the circuit courts in criminal matters, over which it has exclusive appellate jurisdiction.
*877 (2) Mandamus is an extraordinary remedy, but is appropriate in exceptional circumstances which amount to judicial usurpation of power.
(3) Mandamus cannot be used as a substitute for an appeal, when no appeal is authorized by law or court rule, but mandamus can be used to prevent a gross disruption in the administration of criminal justice.
(4) Casual resort to mandamus cannot be permitted to undermine an accused's right against double jeopardy, and only the rarest of circumstances merit an intervention in a criminal case by mandamus; nevertheless, circumstances can arise which present a compelling need for the issuance of mandamus to further important countervailing public interests.
(5) The modern trend in criminal procedure is to permit prosecution appeals from certain adverse rulings made pre-trial and post-verdict, and the absence of a right of appeal militates in favor of exercising supervisory mandamus.

I
The Court of Criminal Appeals had power to issue supervisory mandamus. Amendment No. 328, Section 6.03, Constitution of Alabama, 1901, provides, in part:
(c) The court of criminal appeals and the court of civil appeals shall have no original jurisdiction except the power to issue all writs necessary or appropriate in aid of appellate jurisdiction of the courts of appeals.
(d) The court of criminal appeals shall have and exercise original jurisdiction in the issuance and determination of writs of quo warranto and mandamus in relation to matters in which said court has appellate jurisdiction. Said court shall have authority to issue writs of injunction, habeas corpus and such other remedial and original writs as are necessary to give it a general superintendence and control of jurisdiction inferior to it and in matters over which it has exclusive appellate jurisdiction; ...
The Court of Criminal Appeals, by constitutional grant, has jurisdiction not only to issue all writs necessary or appropriate in aid of its appellate jurisdiction, but also has authority to issue such remedial and original writs as are necessary to give it a general superintendence and control of jurisdictions inferior to it in criminal matters. The power of the Court of Criminal Appeals to exercise this broad grant of supervisory power, especially that specifically granted to it in Section 6.03(d), is not dependent upon a right of appeal, whether granted by statute or court rule.[2]
*878 Admittedly, the authorization of an appeal by the State, whether by statute or court rule, would be the best procedure, but the absence of the right of an appeal by the State cannot restrict the right of the Court of Criminal Appeals to exercise its superintendence and control over inferior jurisdictions in criminal matters. Neither could the absence of a right to appeal restrict the right of this Court to supervise any exercise by the Court of Criminal Appeals of its jurisdiction, as we do in this case. Ex parte Louisville & Nashville R. R. Co., 176 Ala. 631, 58 So. 315 (1912).
Having determined that the Court of Criminal Appeals had authority to issue the writ of mandamus, the next question is whether it appropriately exercised that power.

II
Mandamus is an extraordinary remedy, but is appropriate in exceptional circumstances which amount to judicial usurpation of power. Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed.2d 305 (1967).
In Alabama, it is fairly well settled that notwithstanding the fact that the State has a restricted right in criminal cases to prosecute an appeal, the actions of a trial judge as to certain rulings in criminal cases may be reviewed by mandamus proceedings under appropriate circumstances. In Ex parte State ex rel. Lawson, 237 Ala. 591, 188 So. 242 (1939), this Court stated:
Notwithstanding the restricted right of the State in criminal cases to prosecute an appeal (sections 3238, 3239, Code of 1928), occasions have arisen in which the action of the trial judge as to certain rulings in criminal cases have been reviewed by mandamus proceedings. Ex parte State ex rel. Attorney General, 142 Ala. 87, 38 So. 835, 110 Am.St.Rep. 20; Ex parte State ex rel., 115 Ala. 123, 22 So. 115; State ex rel. Attorney General v. Brewer, 19 Ala.App. 330, 97 So. 777; Ex parte Brewer, 210 Ala. 229, 97 So. 778.
The critical question is whether this was an appropriate circumstance for the issuance of the writ by the Court of Criminal Appeals. The writ could not issue "in aid of appellate jurisdiction" of the Court of Criminal Appeals because a state cannot presently appeal from an order granting a new trial in a criminal case, and as already pointed out, the use of supervisory writs to superintend trial courts has strictly limited application. For example, simply because an order may have been erroneous does not mean that an inferior court lacked the power to enter it. Cf. Will v. United States, 389 U.S. 90, 98, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). "Only exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." Will, supra.
Were exceptional circumstances present here? We conclude that extraordinary circumstances did exist, and even though the Court of Criminal Appeals wrote no opinion setting forth its reasons for granting the writ, we find that the record filed with the Court of Criminal Appeals by the State with its petition demonstrates that the court had a sufficient basis upon which to ground the relief it granted. This case is not substantially unlike a case in the federal system styled United States v. Cravero, 530 F.2d 666 (5th Cir. 1976), which involved the role of the trial judge in ruling on a post-verdict motion and the role of the jury when the credibility of a government witness is involved. In Cravero, the Court opined:
One of the oldest established rules of Anglo-American jurisprudence is that the jury is the arbiter of credibility of witnesses. As the Supreme Court stated in Hoffa v. United States, 385 U.S. 293, 311, 87 S.Ct. 408, 418, 17 L.Ed.2d 374, 387 (1966),
The established safeguards of an Anglo-American legal system leave the veracity of a witness to be detected by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury.
The trial judge cannot arrogate to himself this power of the jury simply because *879 he finds a witness unbelievable. See, United States v. Weinstein, supra [452 F.2d 704], at 713 [2d Cir. 1971]. Under our system of jurisprudence a properly instructed jury of citizens decides whether witnesses are credible. The trial judge is deemed to have no special expertise in determining who speaks the truth. Glasser v. United States, supra [315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680]; United States v. Parr, 516 F.2d 458, 464 (5th Cir. 1975); United States v. Davis, 487 F.2d 112, 126 (5th Cir. 1973); Williamson v. United States, 365 F.2d 12 (5th Cir. 1965); Puentes v. United States, 319 F.2d 581 (5th Cir. 1963).
Cravero was a direct appeal by the government, not a request for mandamus, but we conclude that the method of review is unimportant, if there was before the Court of Criminal Appeals a sufficient showing that the trial judge was guilty of a "usurpation of power," as those terms are used in determining the propriety of a grant of mandamus. We conclude that the Court of Criminal Appeals could have found that the trial judge granted Pugh's motion for a new trial on the ground that the testimony of the victim of the robbery was "dubious."
In determining motions concerning the sufficiency of the evidence, a trial court should take the evidence in the light most favorable to the State and should not substitute its judgment for that of the jury in determining credibility of the witnesses and the weight to be given the evidence. Smith v. State, 23 Ala.App. 488, 128 So. 358 (1930). The rule in federal cases seems to be the same. In United States v. Palacios, 612 F.2d 972 (5th Cir. 1980), the Court outlined the federal rules concerning the determination of the sufficiency of the evidence as it relates to the credibility of witnesses. The Court stated in Palacios that
[t]he jury is the arbiter of the credibility of witnesses, and that for "testimony to be considered incredible (as a matter of law) it must be unbelievable on its face," i.e., testimony as to "facts that (the witness) physically could not have possibly observed or events that could not have occurred under the laws of nature.
See also, United States v. Cravero, 530 F.2d 666 (5th Cir. 1976), United States v. Burns, 597 F.2d 939 (5th Cir. 1979).

III
Mandamus cannot be used as a substitute for appeal, when no appeal is authorized by law or court rule, but mandamus can be used to prevent a gross disruption in the administration of criminal justice. This principle of law is sound and is due to be followed, but equally sound is the principle that mandamus can be used by the government in aid of its lawful rights in the prosecution of criminal cases. In United States v. Dooling, 406 F.2d 192 (2d Cir. 1969), the Court, in granting mandamus, opined:
We will not pause to determine whether, if Judge Dooling entered his proposed order, the government would be able to appeal his determination under 18 U.S.C. § 3731 (1964). Even if it were clear that the government could not appeal the government's argument for mandamus would not be made more compelling, for mandamus may not do service for an appeal which has been barred by the Congress. Will v. United States, 389 U.S. 90, 97, 88 S.Ct. 269 [274], 19 L.Ed.2d 305 (1967). We think it equally true that the fact that the government may have no right of appeal does not act as a conclusive bar to the issuance of mandamus in its favor. Certainly the restrictions placed upon the government's right to appeal do reflect important policy judgments by Congress, at their core protecting the right against double jeopardy, which must not be undermined by casual resort to mandamus. But circumstances can arise which present a compelling need for the issuance of mandamus in order to further important countervailing interests. Here we find this need in our responsibility for preventing gross disruption in the administration of criminal justice, and we act pursuant to our supervisory power over the district courts. Cf.

*880 United States v. Bryan, 393 F.2d 90 (2d Cir. 1968). The Supreme Court, in affirming the issuance of a writ of mandamus by the Court of Appeals for the Seventh Circuit, expressed in the clearest terms its support for the power we now exercise:
We believe that supervisory control of the District Courts by the Courts of Appeals is necessary to proper judicial administration in the federal system. La Buy v. Howes Leather Co., 352 U.S. 249, 259-260, 77 S.Ct. 309, 315, 1 L.Ed.2d 290 (1957).

IV
Casual resort to mandamus cannot be permitted to undermine an accused's right against double jeopardy, and only the rarest of circumstances merit an intervention in a criminal case by mandamus; nevertheless, circumstances can arise which present a compelling need for the issuance of mandamus to further important countervailing public interests. United States v. Dooling, supra, In re United States, 565 F.2d 173 (1st Cir. 1977).

V
The modern trend in criminal procedure is to permit prosecution appeals from certain adverse rulings made pre-trial and post-verdict, and the absence of a right of appeal militates in favor of exercising supervisory mandamus.
Unquestionably, the trend in criminal procedure is to permit prosecution appeals, both before trial and after the factfinding process of the trial is concluded. ABA Standards of Criminal Justice, 21-1.4, and Commentary. Rule 15 of the Proposed Alabama Rules of Criminal Procedure provides for limited prosecution appeals. The primary constraint on the power of the prosecution to appeal stems from the double jeopardy clause of the United States Constitution and similar clauses in state constitutions.
Alabama has not yet adopted a procedure for prosecution appeals, except in very limited circumstances, but this failure does not militate against exercising supervisory mandamus. To the contrary, the absence of a right of appeal "militates in favor of exercising supervisory mandamus." In Re United States, 565 F.2d 173 (1st Cir. 1977). The absence of a right of appeal here could be especially harmful to the State because the trial judge did not grant the new trial because he found that the State had failed to produce sufficient evidence to prove guilt, rather because he himself thought the victim's testimony was "dubious." The ruling of the trial judge, even if conscientiously made, was in excess of his judicial power. If the State could not obtain appellate review of this ruling, which the Court of Criminal Appeals has inferentially determined was beyond the power of the trial judge to make, the defendant could not be retried. Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). In Hudson, the trial judge granted Hudson's motion for a new trial, stating: "I heard the same evidence the jury did[;] I'm convinced that there was no evidence, certainly not evidence beyond a reasonable doubt, to sustain the verdict of the homicide committed by this defendant of this particular victim." 101 S.Ct. at p. 971. In Hudson, after a hearing on Hudson's motion, the trial judge stated: "[T]here was no evidence, certainly not evidence beyond a reasonable doubt, to sustain the verdict"; and he commented, "[H]ow they concluded that this defendant committed the act from that evidence when no weapon was produced, no proof of anyone who saw a blow struck, is beyond the Court's comprehension." 101 S.Ct. at p. 972.
It is interesting to note that in Hudson, the Louisiana Supreme Court refused to exercise its supervisory power to grant the State's request to review the trial judge's ruling in that case but held that "[t]he trial court's grant of a new trial has not been shown to have been an abuse of discretion." Louisiana v. Hudson, 344 So.2d 1 (La.1977). Hudson was retried and was again convicted; he then sought a writ of habeas corpus in a Louisiana state court, contending that the double jeopardy clause barred the State *881 from trying him the second time. Hudson relied on the decision of the Supreme Court of the United States in Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). The trial court denied Hudson's writ and the Louisiana Supreme Court affirmed. The Supreme Court of the United States reversed, and in an opinion by Mr. Justice Powell, opined:
We considered in Burks the question "whether an accused may be subjected to a second trial when conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury's verdict." 437 U.S. at 2, 98 S.Ct., at 2142. We held that a reversal" due to a failure of proof at trial," where the State received a "fair opportunity to offer whatever proof it could assemble," bars retrial on the same charge. Id., at 16, 98 S.Ct., at 2149. We also held that it makes "no difference that the reviewing court, rather than the trial court, determined the evidence to be insufficient." Id., at 11, 98 S.Ct., at 2147 (emphasis in original), or that "a defendant has sought a new trial as one of his remedies, or even as the sole remedy." Id., at 17, 98 S.Ct., at 2150.
Our decision in Burks controls this case, for it is clear that petitioner moved for a new trial on the ground that the evidence was legally insufficient to support the verdict and that the trial judge granted petitioner's motion on that ground. In the hearing on the motion, petitioner's counsel argued to the trial judge that "the verdict of the jury is contrary to the law and the evidence." After reviewing the evidence put to the jurors, the trial judge agreed with petitioner "that there was no evidence, certainly not evidence beyond a reasonable doubt, to sustain the verdict"; and he commented, "[H]ow they concluded that this defendant committed the act from that evidence when no weapon was produced, no proof of anyone who saw a blow struck, is beyond the Court's comprehension." The Louisiana Supreme Court recognized that the trial judge granted the new trial on the ground that the evidence was legally insufficient. The Supreme Court described the trial judge's decision in these words: "[T]he trial judge herein ordered a new trial pursuant to LSA-C.Cr.P. art. 851(1) solely for lack of sufficient evidence to sustain the jury's verdict ...." [State v. Hudson], 373 So.2d [1294] at 1298 [La. 1979]. (emphasis in original). This is precisely the circumstance in which Burks precludes retrials. 437 U.S., at 18, 98 S.Ct., at 2150. See Greene v. Massey, 437 U.S. 19, 24-26, 98 S.Ct., 2151, 2154-55, 57 L.Ed.2d 15 (1978); id., at 27, 98 S.Ct., at 2155 (POWELL, J., concurring). Nothing in Burks suggests, as the Louisiana Supreme Court seemed to believe, that double jeopardy protections are violated only when the prosecution has adduced no evidence at all of the crime or an element thereof.
The State contends that Burks does not control this case. As the State reads the record, the trial judge granted a new trial only because he entertained personal doubts about the verdict. According to the State, the trial judge decided that he, as a "13th juror," would not have found petitioner guilty and he therefore granted a new trial even though the evidence was not insufficient as a matter of law to support the verdict. The State therefore reasons that Burks does not preclude a new trial in such a case, for the new trial was not granted "due to a failure of proof at trial." 437 U.S., at 16, 98 S.Ct., at 2149.
This is not such a case, as the opinion of the Louisiana Supreme Court and the statements of the trial judge make clear. The trial judge granted the new trial because the State had failed to prove its case as a matter of law, not merely because he, as a "13th juror," would have decided it differently from the other 12 jurors. Accordingly, there are no significant facts which distinguish this case from Burks, and the Double Jeopardy Clause barred the State from prosecuting petitioner a second time.
101 S.Ct. 972, 973 (1981).
We are aware that the Supreme Court, in Hudson, has noted that the adoption of the *882 "13th juror" rule is a "question of state law"; but we refuse to adopt the "13th juror" rule because as we have already stated, the jury is the arbiter of the credibility of witnesses in Alabama; therefore, the grant of supervisory mandamus by the Court of Criminal Appeals to prevent the trial judge from sitting as a "13th juror" was appropriate, and the grant of supervisory mandamus by the Court of Criminal Appeals does not require the defendant to stand retrial. In short, no double jeopardy problems are presented such as were presented in United States v. Wilson, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), United States v. Jenkins, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), and Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). In fact, without mandamus, the legitimate interests of the State in having a valid jury verdict stand would be completely frustrated, and the State would be faced squarely with the plea of double jeopardy if it sought to retry Pugh.[3]

VI
Our holding that mandamus is appropriate in this case is not an invitation to the State to invoke supervisory writs to seek review of lower court rulings which are adverse. We state again that only the rarest of circumstances merit intervention by mandamus. The provision for prosecution of appeals within our constitutional framework should come through legislative enactment or court rule, but sound judicial administration of the criminal laws should not await such action in appropriate cases where supervisory writs are indicated.
We also point out that circumstances involving alleged errors of judgment, or errors in the exercise of judicial discretion, would not constitute grounds for invoking supervisory mandamus. For example, in Cannon v. State, 369 So.2d 32 (Ala.1979) (Maddox, Justice, dissenting, with whom Embry, J., concurred), the Court held that mandamus was inappropriate to review a ruling by a trial judge who had dismissed an indictment because he found that numerous prosecution and defense exhibits had been destroyed, and because of that fact the defendant could not receive a fair trial. Cannon is, therefore, distinguishable from this case because here the Court of Criminal Appeals has found an abuse in discretion.
Based on the foregoing, the application for rehearing is granted, the original judgment of this Court is set aside and held for naught and the judgment of the Court of Criminal Appeals is affirmed.
APPLICATION FOR REHEARING GRANTED; AFFIRMED.
TORBERT, C. J., and FAULKNER, ALMON and ADAMS, JJ., concur.
JONES, SHORES, EMBRY and BEATTY, JJ., dissent.
JONES, Justice (dissenting):
I have thought long and searchingly upon what I here say in dissent lest I appear overly alarmed. While I hope this reflection results in a measure of self-imposed restraint, nevertheless, I am constrained to speak forcibly and forthrightly against the majority opinion, which I believe constitutes a most serious and dangerous erosion of our judicial system.
By a bare majority, whether wittingly or unwittingly, this Court has abolished the distinction between review by extraordinary writs of mandamus and by appeals. The restricted office of mandamus, until today, was well defined and well understood; and its uniform application placed it within the narrow confines of other extraordinary appellate remedies. Indeed, so well known is its limited functionto compel public officials to perform ministerial and mandatory duties and prohibit them from acting beyond and outside their authoritythat the *883 practicing Bar rarely encounters any confusion in distinguishing the application of its mode of review from that of straight appeals. For a good statement of this distinction, see City of Decatur v. Mohns, 235 Ala. 640, 180 So. 297 (1938).
Review by extraordinary writs is of common law origin. Our inclusion of these remedies in ARAP 21 is a mere codification of their common law evolvement. The right of appeal exists only by virtue of statute or by Supreme Court rule. Code 1975, § 12-22-91 (permitting the State to appeal from an order declaring a statute unconstitutional), is the only statutory authorization for review by appeal in favor of the State in a criminal prosecution. Currently, no rule of this Court expands this right.
My concern is not one of technical niceties. The judicial system constitutes one of the three separate and equal branches of our constitutional government. The courts of our land stand as the ultimate bulwark against tyranny, serving as the watchtower of liberty by insuring that the rule of law is equally and fairly administered. The foundation of such a watchtower cannot be shifting sand. Instead, its structure of honor and integrity must be grounded on solid and proven concepts lest its beacon lose both its brilliance and its focus. The fundamental concept of our judicial systemrequisite to its stability and enduranceis its underpinning of fixed principlesprocedural and substantive, well defined and commonly understoodto govern the decision-making process. Adherence to rules, not for their own sake but for the sake of the principles reflected thereby, is the essence of a government of laws and not of men. This is our legal heritage; and to abandon its basic precepts is to engage in unwarranted experimentation at grave risk of undermining our time-tested judicial institutions.
This is not a plea for unaltered rules of law. Inherent in the system is both the power and the mode for change. Stability can hardly be defended as an end in itself. Stare decisis is a golden rule, not an iron rule. Indeed, the common lawlikened unto a running stream and not a dead sea is itself an evolving process, everchanging to comport with experience and to meet contemporary societal standards and needs.
But it is one thing to change the rule and then proceed in accordance with its newly pronounced principle, and quite another thing to leave the rule unchanged and simply ignore its operative effect for the sake of a perceived desirable result. Even if we assume abstract justice in a given case, such perversion of the traditional process lends itself ultimately to neither justice nor stability of the law and its application. Instead, it leads inexorably to an ad hoc type of decision making by committee rather than by an orderly judicial process. To paraphrase Justice Jackson, equal justice under law presupposes some law.[1]
That such a perversion has occurred here is not fairly debatable. The State has no right of appeal. The trial judge acted within his authority to entertain the Defendant's motion for a new trial. If he has the right to entertain it, then surely one of his options, within the exercise of his judicial discretion, is to grant the motion if any ground therefor is valid. To be sure, if in his considered judgment any ground is valid, he is duty bound to grant the motion. While mandamus will lie to compel the exercise of his discretion, it is not the office of the writ to compel the manner in which it is exercised. The trial judge can be forced to rule, one way or the other; but he cannot be told which way to rule. East v. Todd, 284 Ala. 495, 226 So.2d 153 (1969). The one narrow exception is where the trial court's course of action is mandated by law (e.g., in certain cases involving jurisdiction and venue, or where the relief sought involves purely ministerial or mandatory duty.)[2]
*884 In dealing with this exception, some of the cases resort to the phrase "unless he abuses his discretion." Strictly speaking, this phrase should read, "unless the trial judge attempts to exercise discretion when no discretion is permitted under the law." I have found no Alabama case, and the majority opinion cites none, that applies the abuse of discretion exception to grant a writ of mandamus where the trial judge had the right to exercise his judicial discretion.[3] See State Board of Administration v. Roquemore, 218 Ala. 120, 117 So. 757 (1928). This should not be surprising, for a literal interpretation of the phrase "unless he abuses his discretion" would effectively destroy the essential substantive distinction between the right of review by appeal and by petition for writ of mandamus. Denson v. First National Bank of Birmingham, 276 Ala. 146, 159 So.2d 849 (1964).
To review by mandamus the propriety of the trial court's order granting defendant's motion for a new trial by evaluating its merits is the identical standard for review by appeal. Once the need for the right of appeal is thus eliminated, the elements that constitute mandamus as an extraordinary writ are lost and the two methods of review equate; and, thus, we have usurped by case law the statutory and rule-making prerogative to establish the right of review by appeal.
One final observation: I personally initiated an addition to the proposed Rules of Criminal Procedure to provide the State the right of appeal from an order granting the defendant a new trial. The Rules as proposed by the Special Committee limited the State's right of appeal to certain adverse pretrial rulings. The ABA Standards of Criminal Justice are not so limited. Indeed, I would have no objection to adopting a rule per the instant case for prospective application, giving the State the right to review by appeal a trial court's order granting the defendant a new trial. Such a holding would be entirely proper, though, in my opinion, the criminal rules are the more appropriate means of promulgating and applying such a procedural change in our law.
But this discussion is of purely academic interest, for a rule allowing appeals by the State is no longer necessary. Henceforth, the right of review of an order granting a new trial is available by way of petition for a writ of mandamus. To be sure, the State has gained much more than that: Where, as here, the writ is granted summarily by the Court of Criminal Appeals and this Court denies the petition for writ of certiorari or affirms the appellate court's order, the State succeeds in setting aside the order granting a new trial and reinstating the judgment of conviction and sentence without giving the defendant the benefit of an in-depth consideration as mandated for review of cases by appeal.
SHORES, Justice (dissenting):
I dissent. I cannot agree that a circuit judge in granting a new trial because he feels "that an injustice has probably been done" is "guilty of usurpation of power." I would, therefore, overrule the application for rehearing.
NOTES
[1] For a better understanding of the undisputed facts, we have gone to the transcript of the trial and the transcript of the proceedings held before the trial judge on Pugh's motion for a new trial. See, In Re Wilbanks v. State, 289 Ala. 171, 266 So.2d 632 (1972).
[2] It is not necessary to a determination of the issue here presented to discuss the distinction between "appeals" and "original writs," but, this Court, in construing Section 140 of the 1901 Constitution, which contains language similar to that in Amendment 328, Section 6.03(d), opined:

This court has previously construed the meaning of the words "superintendence and control" as used in former Constitutions, and we must assume that, when they were brought forward into section 140 of the present Constitution, they were used and employed subject to their well-known interpretation. In the case of Ex parte Croom & May, 19 Ala. [561] 566, it was said: "it is the duty of this court, in order to enable it to carry out the powers with which the Constitution invests it, on exercising `a general superintendence of inferior jurisdictions,' to adopt such course of proceedings as will make its control complete.Ex parte Chaney, 8 Ala. 424." In the case of Ex parte Candee, 48 Ala. 412, the court quotes approvingly from the case of Ex parte Croom & May, supra, and says: "Under this section of the Constitution, the Legislature may impose such restrictions and regulations, not repugnant to the Constitution, upon the appellate jurisdiction of this court, but it has no power to limit or prescribe the mode and manner in which it must exercise its power to issue the writs therein named, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions. If they could, the power thus conferred upon this court by the Constitution might be so crippled and embarrassed as to render it worthless for the great and salutary purpose contemplated by the Constitution."
Ex parte Louisville & Nashville R. R. Co., 176 Ala. 631, 58 So. 315 (1912).
[3] In a letter dated June 26, 1981, Pugh's counsel stated, in part:

Based upon the most recent cases, previously cited, applicable in the instant case, Harold Pugh may not be retried with an appropriate plea of double jeopardy.
[1] See Justice Jackson's concurring opinion in Brown v. Allen, 344 U.S. 443, 546, 73 S.Ct. 397, 407, 97 L.Ed. 469 (1953).
[2] For an excellent example of this exception, see Ex parte Weissinger, 247 Ala. 113, 22 So.2d 510 (1945), in which the Court, by writ of mandamus, compelled the trial court to apply the venue statute in a divorce action according to its express terms.
[3] The majority's application of "abuse of discretion" in this motion for new trial context is misplaced, resulting from an ill conceived concern over the validity of a double jeopardy plea upon retrial. This unfortunate prejudgment of the ultimate outcome of the case produces an erroneous result oriented holding and is based upon a misinterpretation of Hudson v. Louisiana [1981], 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). This is a clear case of a trial judge's entertaining personal doubts about the verdict and acting to prevent a perceived injustice. Hudson bars a second trial only where the new trial motion's ground of insufficiency of the evidence is sustained.