437 So.2d 1337 (1982)
James Ray McDONALD, alias
v.
STATE.
6 Div. 861.
Court of Criminal Appeals of Alabama.
December 28, 1982.
Rehearing Denied February 1, 1983.
*1338 J. Edmund Odum, Jr., Birmingham, for appellant.
Charles A. Graddick, Atty. Gen., and J. Thomas Leverette, Asst. Atty. Gen., for appellee.
BARRON, Judge.
In 1975, appellant was convicted of buying, receiving, concealing stolen property and sentenced to ten years' imprisonment. This court affirmed the conviction in McDonald v. State, 349 So.2d 100 (Ala.Cr. App.), cert. denied, 349 So.2d 102 (Ala.1977).
In 1981, appellant filed a petition for writ of error coram nobis, along with supporting affidavits, challenging his conviction on the basis of newly discovered evidence. After a hearing in February 1982, the trial court denied the petition and appellant filed notice of appeal.
The primary witness for the State at trial in 1975 was a Homewood police officer who identified appellant as the driver of a vehicle, subsequently found to contain stolen property, which he pursued on August 11, 1972. Upon stopping the automobile, the officer ordered the two occupants to exit the car and put their hands on the roof. At that point, the passenger, Tommy Frank Hare, fled and the officer gave chase. The passenger was later apprehended but the driver, identified at trial as the appellant, escaped. Appellant presented an alibi defense.
Appellant's coram nobis petition alleged that he had recently discovered evidence proving that he was not the driver, that he was not involved in the offense, and that one John W. Hare was the driver of the vehicle on the date in question.
The petition contained affidavits from John E. Hare and his brother, Tommy Frank Hare, and their mother to the effect that John E. Hare, and not the appellant, was the driver of the vehicle in question; the Hare brothers, both of whom are presently incarcerated in penal institutions, are friends of the appellant. Also, the petition included affidavits from the attorney who represented appellant at the original trial to the effect that appellant was in his office at the time of the incident, and from the attorney who represented the Hare brothers in 1972 to the effect that his clients advised him shortly after the incident that John E. Hare, and not the appellant, was the driver of the vehicle in question. Additional affidavits to the same general effect were included in the petition.
At the hearing on the coram nobis petition, the attorney for the Hare brothers in 1972 was the only witness who testified. He related facts stated in his affidavit and added that, at the time, he was concerned that appellant had been charged with, and convicted for, an offense which he believed his own client had committed, yet he concluded that, based on the attorney-client privilege, he was unable to divulge facts which would implicate his client or exonerate the appellant. He stated that he had recently secured a waiver of that privilege from both of his clients and was at liberty to divulge the information he had received from them in 1972. He added that at the time of the offense his client, John E. Hare, and the appellant had similar physical appearances. He also testified that, in his judgment, his client John E. Hare had neither the time nor the motive to fabricate his involvement in the offense when he (Hare) related the facts to the attorney on August 11, 1972.
At the conclusion of the coram nobis hearing, after listening to the arguments of counsel urging that the newly discovered evidence overcame the effect of the identification testimony given at trial, the trial court denied the petition, stating:

*1339 "I'm going to cite one case for the record to make sure if this is reviewed they will have the benefit of what I am thinking. You mentioned the police officer, testimony of the police officers. In United States versus Cravero, 530 Federal 2nd 666, in the Fifth Circuit, 1976, they explained the role of the trial judge and the role of a jury as far as credibility of witnesses, whether it be a State witness, government witness, whatever witness, and that's strictly within the province of the jury, and I am denying the petition for writ of error coram nobis."
The thrust of the newly discovered evidence is (1) an alibi defense that appellant was in an attorney's office at the time the incident happened and, therefore, could not be guilty of the offense, and (2) that the driver of the car in question was his friend, John E. Hare, and not appellant.
At his original trial, appellant presented alibi witnesses, but there was no evidence presented to the effect that he was in his attorney's office at the time of the incident. Certainly, the information as to his whereabouts at the time in question would have been available to both the appellant and his then attorney at the time of the original trial, and thus cannot serve as newly discovered evidence to justify the issuance of the writ. Writ of error coram nobis is appropriate only when petitioner's claim is based on facts which were not known and could not have been discovered with the exercise of reasonable diligence at the time of trial. Summers v. State, 366 So.2d 336 (Ala.Cr.App.1978), writ denied, Ex parte Summers, 366 So.2d 346 (Ala. 1978). A petition for writ of error coram nobis is not intended to relieve a party of his own negligence. Behel v. State, 405 So.2d 51 (Ala.Cr.App.1981).
The trial court was apparently not impressed, and neither are we, with a "confession" by a criminal friend of the appellant after the expiration of the statute of limitations for prosecution of the offense.
Appellant urges a reversal on the ground that the newly discovered evidence would probably have changed the result of the original trial. Such newly discovered evidence appears to be cumulative to the alibi evidence presented by appellant at the original trial, which was obviously rejected by the jury. Additionally, we perceive the proper standard to be that the newly discovered evidence would be such as would have prevented the conviction, not "would probably have changed the result." Lewis v. State, 367 So.2d 542 (Ala.Cr.App.1978), writ denied, Ex parte Lewis, 367 So.2d 547 (Ala.1979). In view of the positive in-court identification of appellant at the original trial by two Homewood police officers, appellant's position does not measure up to the required standard.
Appellant has not established his right to relief by the required clear, full, and satisfactory proof. The judgment of the trial court denying the petition is due to be, and is hereby, affirmed.
AFFIRMED.
TYSON, BOWEN and DeCARLO, JJ., concur.
HARRIS, P.J., dissents.
HARRIS, Presiding Judge, dissenting:
This case was originally assigned to me for preparation of an opinion for this court, but it was not accepted by the majority.
If the testimony set forth in my original opinion together with the supporting affidavits are true, then appellant is innocent and is serving time for a crime which he did not commit. If he is serving time for a crime which he did not commit, then a grave miscarriage of justice has been perpetrated. I, therefore, respectfully dissent.
In 1975, appellant was convicted of buying, receiving, concealing stolen property and sentenced to ten years' imprisonment. This court affirmed the conviction in McDonald v. State, 349 So.2d 100 (Ala.Cr. App.), cert. denied, 349 So.2d 102 (Ala.1977).
*1340 In 1981, appellant filed a petition for writ of error coram nobis, along with supporting affidavits, challenging his conviction on the basis of newly-discovered evidence. After a hearing in February 1982, the trial court denied the petition and appellant filed notice of appeal.
The primary witness for the State at trial in 1975 was a Homewood police officer who identified the appellant as the driver of a vehicle, subsequently found to contain stolen property, which he pursued on August 11, 1972. Upon stopping the automobile, the officer ordered the two occupants to exit the car and put their hands on the roof. At that point, the passenger fled and the officer gave chase. The passenger was later apprehended but the driver, identified at trial as the appellant, escaped. Appellant presented an alibi defense.
Appellant's coram nobis petition alleged that he had recently discovered evidence proving that he was not involved in the offense and that one John E. Hare was the driver of the vehicle on the date in question. The following offers of evidence were attached to the petition:
(1) Affidavit of John E. Hare, stating that he, and not the appellant, was driving the vehicle containing the stolen property, and that he was accompanied by his brother, Tommy Frank Hare;
(2) Affidavit of Tommy Frank Hare stating that he and his brother John were the only occupants of the automobile in question and averring that appellant had no part in stealing, receiving, or concealing the property;
(3) Affidavit of Dorothy Hare, mother of John E. and Tommy Frank Hare, stating that her son John told her that he and Tommy, rather than appellant, were involved in the crime for which appellant was convicted;
(4) Affidavit of Annette Wells stating that on August 11, 1972, she loaned her car to the Hare brothers and they were the only occupants of the vehicle when it left her residence;
(5) Affidavit of attorney Arthur Parker stating that at the time of the alleged offense appellant was in his (Parker's) office;
(6) Affidavit of Rubinelle S. Singleton stating that she was with appellant from 11:00 a.m. to 12:15 p.m. on August 11, 1972, and that she drove appellant to attorney Arthur Parker's office for an appointment;
(7) Letter to attorney Edward L. Hardin from Clyde A. Wolfe, Commercial Polygraph, Inc., stating that he had given appellant a lie detector examination on the facts surrounding the instant offense and that the results indicated appellant's denial of involvement was "substantially the truth."
(8) Affidavit of appellant, James Ray McDonald, stating that he learned of the involvement of the Hare brothers in the crime for which he was convicted during a telephone conversation with Tommy Frank Hare in January, 1979, and that he was unaware of this evidence at the time of his trial in 1975.
(9) Affidavit of attorney J. Wilson Dinsmore stating that he represented both of the Hare brothers in 1972, and that on August 11 of that year, John E. Hare related to him the facts surrounding the offense for which appellant was convicted. Hare said that the brothers had been stopped by the police, that Tommy Frank had been caught and that John E. had escaped. Dinsmore's affidavit concluded as follows: "I determined the police had Tommy in custody and had misidentified John E. Hare, and were looking for one (1) James R. McDonald. Johnny told me James R. McDonald had nothing to do with the theft of the Buick or the Chevrolet."
At the hearing on the coram nobis petition, attorney J. Wilson Dinsmore was the only witness who testified. He related facts stated in his affidavit and added that, at the time, he was concerned that appellant had been charged with and convicted *1341 for an offense which he believed his own client had committed, yet he concluded that, based on the attorney-client privilege, he was unable to divulge facts which would implicate his client or exonerate the appellant. He stated that he had recently secured a waiver of that privilege from both of his clients and was at liberty to divulge the information he had received from them in 1972.
Dinsmore added that at the time of the offense his client, John E. Hare, and the appellant had similar physical appearances. He also testified that, in his judgment, his client John E. Hare had neither the time nor the motive to fabricate his involvement in the offense when he (Hare) related the facts to Dinsmore on August 11, 1972.
At the conclusion of the coram nobis hearing, after listening to the arguments of counsel urging that the newly-discovered evidence overcame the effect of the identification testimony given at trial, the court stated the following:
"I'm going to cite one case for the record to make sure if this is reviewed they will have the benefit of what I am thinking. You mentioned the police officer, testimony of the police officers. In United States versus Cravero, 530 Federal 2nd, 666, in the Fifth Circuit, 1976, they explained the role of the trial judge and the role of a jury as far as credibility of witnesses, whether it be a State witness, government witness, whatever witness, and that's strictly within the province of the jury, and I am denying the petition for writ of error coram nobis."
In Cravero, the government appealed from a decision of the trial court granting a motion for judgment of acquittal, based on insufficiency of the evidence, after the jury had returned a verdict of guilty. The trial judge had expressed doubts about the credibility of the government's main witness, but ruled that, even accepting the witness's testimony as true, the government had not "presented a sufficient prima facie case for the jury." 530 F.2d at 670.
The Court of Appeals for the Fifth Circuit reversed the trial court's ruling, found that the evidence was sufficient to establish a prima facie case, reinstated the jury's verdict, and observed that "[t]he trial judge cannot arrogate to himself this power of the jury [to determine the credibility of witnesses] simply because he finds a witness unbelievable." Id.
Citing Cravero, the Alabama Supreme Court upheld the grant of a writ of mandamus to compel a circuit judge to set aside his ruling that a defendant was entitled to a new trial because the judge had "doubts" about the testimony of the State's key witness. Ex parte Nice, 407 So.2d 874, 876 (Ala.1981). The court determined that the trial judge's ruling was a "usurpation of power," 407 So.2d at 879, and "in excess of his judicial power," 407 So.2d at 880.
It is apparent, therefore, that both the Fifth Circuit Court of Appeals in Cravero and the Alabama Supreme Court in Ex parte Nice based their holdings on the fact that the trial court had, as a "thirteenth juror," invaded the province of the factfinders. That situation, however, is not present here. A petition for writ of error coram nobis on grounds of newly discovered evidence does not ask the trial judge to substitute his judgment for that of the jury. It requires the trial court to weigh evidence other than what the jury had before them at trial, and it requests the court to determine whether, based on evidence the jury did not hear, the petitioner is entitled to a new trial.
Thus, a trial court who rules on whether newly-discovered evidence entitles a petitioner to a retrial cannot usurp the function of the original jury. Unlike a trial judge who grants a post-judgment motion for new trial based on his own belief that the jury verdict was wrong, a court which grants a coram nobis petition on grounds of newly-discovered evidence has not determined that the jury verdict was in error. Instead, he has found that, notwithstanding the sufficiency of the evidence originally *1342 testified, the newly-discovered proof, had it been known, would have prevented the original conviction. See Goodman v. State, 387 So.2d 862 (Ala.Cr.App.), cert. denied, 387 So.2d 864 (Ala.1980).
In my judgment, the holdings of Cravero and Nice are inapplicable to post-conviction motions based on newly-discovered evidence. In such motions, the trial court is necessarily required to determine the credibility of the allegedly-new proof, see Robinson v. State, 389 So.2d 144 (Ala.Cr.App.), cert. denied, 389 So.2d 151 (Ala.1980); Prince v. State, 356 So.2d 750 (Ala.Cr.App. 1978), and he does not invade the province of the jury by making that determination.
I would, therefore, remand this cause and direct the trial court to determine, based upon his judgment of the credibility and admissibility of the evidence alleged to be newly-discovered, whether appellant is entitled to a new trial. "The truthfulness or falsity of the evidence presented is not for this court to decide." Robinson v. State, supra at 149.