This is an appeal from the denial of a petition for writ of error coram nobis. In 1983, Gary Wade Williams was convicted of murder and sentenced to life imprisonment. That conviction was affirmed on appeal. Williams v. State, 451 So.2d 411
(Ala.Cr.App. 1984). In 1985, Williams filed a petition for writ of error coram nobis alleging *Page 5 
the discovery of new evidence and the ineffective assistance of his trial counsel. After an evidentiary hearing, the petition was denied. We find that that denial was proper.
 I
In denying the petition, the trial court stated: "With respect to the petitioner's alleged newly discovered evidence, this Court finds that the testimony of Gregory Vargas and Roy Arrant is not credible and further finds that said witnesses were sufficiently impeached by proof of their prior convictions of crimes involving moral turpitude."
The denial of this ground of the petition was proper. At a coram nobis hearing, "the trial judge must `believe' the testimony and . . . the burden on petitioner is to submitclear, full, and satisfactory proof of his assertions for relief." Seibert v. State, 343 So.2d 788 (Ala. 1977) (emphasis in original).
At his trial, the State's evidence showed that Williams killed Sandra Phillips in the motel room and then called John Hindman to help him dispose of the body. Terry Metler helped Williams and Hindman bury the body. Williams, 451 So.2d at 415.
The alleged newly discovered evidence was the testimony of two inmates of the Alabama Prison System. According to the affidavit of Gregory Vargas, Miss Phillips died from a drug overdose in a motel room with himself, Hindman, and Metler on the morning of March 5, 1981, which was after Williams had killed Miss Phillips according to the State's evidence presented at his trial. Vargas had prior convictions for possession of a forged instrument, issuing worthless checks (two), possession and sale of Quaaludes, and obtaining drugs by fraud.
Roy Arrant testified at the coram nobis hearing that Miss Phillips, Hindman, and Metler knew each other in a "cozy" manner prior to March 5, 1981. Arrant had prior convictions for obtaining drugs by fraud, forgery (four), theft (two), and burglary. Both Arrant and Vargas gave Williams this information after Williams had been convicted for murder and while they were confined in the same penal facility with Williams.
At Williams' trial, both Hindman and Metler testified as State's witnesses implicating Williams and directly connecting him alone with Miss Phillips' murder.
The trial judge determined that Williams was not entitled to a new trial based on his judgment of the credibility of witnesses Arrant and Vargas. This determination was within his discretion.
 "A petition for writ of error coram nobis on grounds of newly discovered evidence does not ask the trial judge to substitute his judgment for that of the jury. It requires the trial court to weigh evidence other than what the jury had before them at trial, and it requests the court to determine whether, based on evidence the jury did not hear, the petitioner is entitled to a new trial.
 "Thus, a trial court who rules on whether newly-discovered evidence entitles a petitioner to a retrial cannot usurp the function of the original jury. Unlike a trial judge who grants a post-judgment motion for new trial based on his own belief that the jury verdict was wrong, a court which grants a coram nobis petition on grounds of newly-discovered evidence has not determined that the jury verdict was in error. Instead, he has found that, notwithstanding the sufficiency of the evidence originally testified, the newly-discovered proof, had it been known, would have prevented the original conviction. See Goodman v. State, 387 So.2d 862 (Ala.Cr.App.), cert. denied, 387 So.2d 864 (Ala. 1980)." McDonald v. State, 437 So.2d 1337, 1341-42 (Ala.Cr.App. 1982) (Harris, P.J., dissenting), reversed, Ex parte McDonald, 437 So.2d 1342-43 (Ala. 1983) ("[T]his Court has concluded that the dissenting opinion of Harris, J., states the proper rule of review of such petitions.").
 II
Williams alleged that his trial counsel was ineffective because he (1) failed to file *Page 6 
a motion for a change of venue, (2) failed to have the court reporter read a portion of Metler's trial testimony during that trial to clarify exactly what that testimony was, and (3) "failed to subpoena two key witnesses . . . even though this was requested by petitioner." We find these allegations without merit, and, were it not for the gravity of the allegations themselves, would dismiss them without further comment.
"Challenges based on the inadequacy of counsel constitute grounds for coram nobis." Summers v. State, 366 So.2d 336, 341
(Ala.Cr.App.), cert. denied, 366 So.2d 346 (Ala. 1979). See also Traylor v. State, 466 So.2d 185, 188 (Ala.Cr.App. 1985).
In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,2064, 50 L.Ed.2d 674 (1984), the United States Supreme Court fashioned a two-part test for reviewing claims of ineffective assistance of counsel:
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Trial counsel was Fred Simpson. The record shows that Simpson also represented Williams "in the burglary and theft charge in which . . . [he] got a hung jury." Simpson testified that he did not file a motion for a change of venue. He stated that the publicity surrounding Williams' trial was "normal for an interesting murder case. It was not as much as I have seen in other cases, but was certainly more than probably the average case." During this time, Williams was tried for rape, robbery, theft, and murder and the publicity "all flowed together." Simpson testified:
 "I submitted motions until everybody in the court was mad at me. I forget how many I filed. It was about 15 or 20 different motions. I have practiced in Madison County for 20 years and . . . I don't know of any motion for change of venue that has ever been granted. As I testified earlier, there was a larger or more media coverage in this case than the normal murder case, but less than numerous other cases of that type. The most publicity I ever saw in a case was a case called the Southwest Molester, and that case was denied a change of venue and upheld by the Appellate Courts. I'm saying that that was just a worthless motion. I couldn't win it and I knew it and I didn't file it. . . . I think that would have been a worthless motion and that's why I didn't file it. Along with consultation with other attorneys, I didn't file it."
In order to prevail on a motion for a change of venue, a defendant must show (1) "that prejudicial pre-trial publicity `has so saturated the community as to have a probable impact on the prospective jurors,'" or (2) "`a connection between the publicity generated . . . and the existence of actual jury prejudice.'" Nelson v. State, 440 So.2d 1130, 1131-32
(Ala.Cr.App. 1983). See also Ex parte Kennedy, 472 So.2d 1106,1112-13 (Ala.), cert. denied, ___ U.S. ___, 106 S.Ct. 340,88 L.Ed.2d 325 (1985).
At the coram nobis hearing, Williams did not offer any evidence to suggest actual prejudice on the part of the jury. Williams did introduce several newspaper articles and "rundowns" of news programs from one local television station concerning his case. The State stipulated to the coverage by other television stations in the area.
Of the thirteen newspaper articles introduced, eleven were published after Williams' *Page 7 
trial had commenced and the jury had been sequestered. More than half of the news broadcasts were aired six to twelve months before Williams was tried.
"The courts in modern cases have typically rejected ineffective assistance contentions with respect to venue-related matters in which counsel . . . fails to move for a venue change at a jury trial." Annot., 7 A.L.R. 4th 942, 946 (1981). See Cooper v. Campbell, 597 F.2d 628, 630, n. 5 (8th Cir.), cert. denied, 444 U.S. 852, 100 S.Ct. 106, 62 L.Ed.2d 69
(1979) (claim meritless where trial attorney stated that in his judgment there had not been enough pretrial publicity to warrant moving for a change of venue).
Although Simpson did not file a motion for a change of venue, he examined the jury venire "on the existence of media coverage." See, Raulerson v. Wainwright, 732 F.2d 803, 809
(11th Cir.) cert. denied, ___ U.S. ___, 105 S.Ct. 366,83 L.Ed.2d 302 (1984) (counsel not ineffective where, although he filed no change of venue motion, he did explore the possibility of seeking a change in venue, but after the voir dire examination, he determined that such action would be fruitless).
In light of the circumstances, we find that counsel's actions were matters of sound trial strategy rather than negligence or error. See Strickland, 104 S.Ct. at 2066.
Assuming, arguendo, that counsel's conduct was professionally unreasonable, Williams failed to affirmatively prove prejudice. There is no showing that "but for counsel's unprofessional errors" there was a reasonable probability that the result of the trial would have been different. Strickland,104 S.Ct. at 2067, 2068. Absent such a showing, it cannot be said that Williams' conviction "resulted from a breakdown in the adversary process that renders the result unreliable."Strickland, 104 S.Ct. at 2064.
Williams also alleges that his trial counsel was ineffective for failing to request that the court reporter be allowed to read back a portion of the testimony of Terry Metler, a State's witness.
In our opinion affirming Williams' conviction, this Court found that Simpson had laid the proper predicate during his cross-examination of Metler which would justify the admission of the impeaching testimony of defense witness Ben Tipton.Williams, 451 So.2d at 419. This Court found that, although the trial judge should have allowed Tipton to testify concerning Metler's prior inconsistent statement, this was not error because (1) Simpson did not request that the material portion of Metler's testimony be read back by the court reporter, and (2) the exclusion of Tipton's testimony did not prejudice Williams because it was cumulative of other evidence damaging to Metler's credibility and because the evidence of Williams' guilt was "strong." Williams, 451 So.2d at 420. In the absence of prejudice, Williams' allegation of ineffective assistance of counsel cannot be sustained. Strickland, 104 S.Ct. at 2064. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland,104 S.Ct. at 2067. "Effective representation of counsel does not require that counsel be errorless, . . . and a showing that counsel made a mistake unfavorable to the defendant is not sufficient to establish inadequate representation." Zeigler v. State,443 So.2d 1303, 1306 (Ala.Cr.App. 1983).
Finally, Williams asserts that Simpson was ineffective because he "failed to subpoena two key witnesses . . . even though this was requested by petitioner." Our review fails to disclose the identity of those two witnesses or the substance of their testimony. From the record, this allegation is totally devoid of factual merit and support.
Simpson, who represented Williams both at trial and on the appeal of his conviction, has a reputation of being an experienced and aggressive criminal defense attorney. Our review of Williams' original trial and the record of the coram nobis proceeding *Page 8 
now under consideration shows that Williams was very well represented by Simpson and that Williams' allegations of ineffectiveness are unfounded. This case bears out the observation that "[t]he claim of `ineffective assistance of counsel' has become a sort of `canned' claim which appears in practically every post-conviction claim." Ex parte Boatwright,471 So.2d 1257, 1259 (Ala. 1985) (Maddox, J., concurring specially).
 III
The trial court did not abuse its discretion in granting a motion to quash a subpoena duces tecum which directed theHuntsville Times to appear and produce all newspaper accounts of Williams' case from July, 1981, to September, 1984. Williams sought the articles to show that the pre-trial publicity was "so persuasive and so prejudicial . . . that a Motion for a change of Venue should have been filed."
 "Whether a subpoena duces tecum should be enforced is, in the first instance, a question for the trial court. An order to quash should be reversed only for abuse of discretion. Premium Service Corp. v. Sperry Hutchinson Co., 511 F.2d 225 (9th Cir. 1975). A judge abuses his discretion only when his decision is based on an erroneous conclusion of law or where the record contains no evidence on which he rationally could have based his decision. Ibid." Dowdy v. Gilbert Engineering Co., 372 So.2d 11, 12 (Ala. 1979).
A trial court has the inherent power to quash a subpoena duces tecum because it is unreasonable or oppressive.
 "The approved method of testing the validity and scope of the command of a subpoena duces tecum is to move to quash, vacate, or modify it. In this respect, a court has inherent power to entertain a motion to quash a subpoena duces tecum and to grant or deny it, and under the Federal Rules of Criminal Procedure, the court, on motion, may quash or modify a subpoena duces tecum if compliance would be unreasonable or oppressive." 97 C.J.S. Witnesses § 25 (j) (1957).
Generally, a person seeking the production of documentary evidence by subpoena duces tecum should show that the documents sought are "not otherwise practically available," or "that they are not otherwise procurable . . . by the exercise of due diligence." Id. at § 25 (f).
In granting the motion to quash the subpoena, the trial court found that the subpoena duces tecum was "unduly burdensome" and that the newspaper articles sought by Williams were available "through the Public Library." Furthermore, although the trial judge would not require the Huntsville Times to "appear and produce" the articles sought by Williams under the subpoena, he stated that he would require the newspaper to appear and authenticate any article that Williams offered. Under these facts, we find no abuse in the exercise of the trial court's discretion.
Alabama Code 1975, § 12-21-2, authorizing a subpoena duces tecum addressed to persons not a party to the action "excludes the notion that it also embraces discovery as one of its purposes." Williams v. State, 383 So.2d 547, 559 (Ala.Cr.App. 1979), affirmed, Ex parte Williams, 383 So.2d 564 (Ala.), cert. denied, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980);Reeves v. State, 470 So.2d 1374, 1376 (Ala.Cr.App. 1985).
Williams received a fair trial. That trial has withstood the challenge of an appeal. Additionally, Williams has collaterally attacked his conviction through the use of a petition for writ of error coram nobis. That petition was properly denied. The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 9